**Kristie Rae COOK and Tiffani Cherie Cook, Personal Representatives of the Estate of Gina Cook, Plaintiffs and Appellants,**

v.

**ZIONS FIRST NATIONAL BANK, Defendant and Appellee.**

**No. 950750–CA.**

Court of Appeals of Utah.

June 20, 1996.

Roger H. Hoole, Paul M. King, and Heather E. Morrison, Hoole & King, L.C., Salt Lake City, for Appellants.

Lois A. Baar, Douglas R. Davis, and Michael A. Zody, Parsons, Behl & Latimer, Salt Lake City, for Appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Gina Cook appealed the trial court's grant of summary judgment in favor of Zions First National Bank (Zions). We reverse the summary judgment and remand the case for further proceedings.

## FACTS [1]

In 1988, Zions hired Cook as a part-time employee. Prior to her employment,

---

1. When reviewing a summary judgment, we review the facts in the light most favorable to the appellant. *Rose v. Allied Dev. Co.*, 719 P.2d 83, 84 (Utah 1986).

2. Regarding the rate of sick leave accrual, the Employment Benefits Disclosure and Pay Agreement provided the following:

Zions told Cook that as part of her employment, she would accrue time for "involuntary leave of absence" or sick leave. Cook signed an Employment Benefits Disclosure and Pay Agreement that listed her initial pay rate, employment status, and available benefits. Later, Cook became a full-time employee and continued to accrue time for sick leave.[2] To use sick leave for scheduled medical procedures, employees were required to submit written requests to their supervisors for approval. Throughout her employment with Zions, Cook received wages and used sick leave accrued at the rate listed in the Employment Benefits Disclosure and Pay Agreement.

At the beginning of 1994, Cook's department manager stated that she did not want anyone taking time off during the next several months because Zions was in the process of acquiring another bank and Cook's department was converting to a new computer system. This required the personnel in the department to work overtime for the next few months. Nevertheless, at the end of January 1994, Cook was granted one hour off to have a lump removed from her lip.

When she arrived for her scheduled appointment, Cook's physician decided that the surgery would need to be rescheduled because the outpatient procedure would require a full day at the hospital. Cook immediately requested one day off work so she could have the lump removed. Her request was denied, as were repeated requests over the following months. Cook claimed that she was afraid that she would be fired if she proceeded, on her own initiative, to schedule the surgery and then call in sick. Finally, on May 20, the lump was removed after Cook was allowed a day off for surgery. Shortly thereafter, Cook was informed that she had a form of aggressive, malignant melanoma.

Cook continued her employment with Zions, but sued Zions for breach of contract

Involuntary Absences from Work (leave credit 90–day waiting period)—1 day per month for full-time employees; 1 day (8 hours) per 2 months for those working at least 20 hours per week.

and breach of an implied covenant of good faith and fair dealing concerning the use of sick leave. Zions filed a Motion for Summary Judgment, which the trial court granted. In its Memorandum Decision, the trial court determined there was no employment contract between the parties. The trial court also determined the implied covenant of good faith and fair dealing was inapplicable to Cook's claim.

Cook appealed the summary judgment. While the appeal was pending, in March 1996, Cook died from the effects of her melanoma. Pursuant to a stipulation, the personal representatives of Cook's estate were substituted for Cook as plaintiffs and appellants.

## STANDARD OF REVIEW

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *K & T, Inc. v. Koroulis*, 888 P.2d 623, 626–27 (Utah 1994). Because summary judgments are decided as questions of law, we accord no deference to the trial court's determinations and review the issues under a correctness standard. *K & T, Inc.*, 888 P.2d at 627. We determine only whether the trial court correctly held that no disputed issue of material fact exists and whether the trial court properly applied the governing law. *Id.*

## ANALYSIS

### Express Contract

■ Cook argues that she had an express contract with Zions concerning the accrual and use of her sick leave.[3] As part of her compensation package, Zions offered Cook sick leave. This was memorialized in the Employment Benefits Disclosure and Pay Agreement, which both parties signed. Cook therefore entered into an employment contract with Zions, an express term of which was Cook's compensation for sick leave. Ac-

cordingly, we cannot agree with the trial court that, as a matter of law, no employment contract existed between the parties.

■ Zions argues that Cook's claim of breach of express contract fails because the Employment Benefits Disclosure and Pay Agreement merely provided a schedule for accrual of sick leave. Zions argues that Cook accrued her sick leave according to the schedule and thus there was no breach of contract. However, this narrow interpretation would defeat the very purpose for which parties contract to obtain sick leave. Employees do not contract with an employer to receive sick leave merely to watch their hours accrue. At some point, the employees will use those accrued hours to take time off to take care of their health.

■ In the present case, there is no specific provision explaining when, how, or why Cook could use sick leave. The only condition for Cook's exercise of her sick leave was that she request permission from her supervisor.[4] Cook received wages and accrued sick leave at the rate memorialized in the Employment Benefits Disclosure and Pay Agreement, and used sick leave during the several years she was employed with Zions. Zions does not dispute this. Zions argues, however, that its employee handbook expressly disclaims any employment contract. Cook denies ever having received the 1992 handbook and the 1994 handbook was distributed after the alleged breach. In any event, despite employee handbook language disavowing the existence of a contract, Zions continued to pay Cook wages and to award her sick leave as it had since the day she signed the Employment Benefits Disclosure and Pay Agreement. Zions never attempted to change the terms of Cook's sick leave accrual and use. The parties therefore had an express contract as to sick leave.

### At-will Employment

■ The trial court's Memorandum Decision confuses the interplay between at-will

---

3. Cook also contends, alternatively, that she had an implied-in-fact contract. In light of our decision concerning the express contract, we need not address the implied-in-fact contract theory.

4. The employee handbook provides that "[i]f it is absolutely impossible to schedule an appoint-

ment for personal matters (medical, dental, etc.) at any other time than during working hours, permission for absence must be obtained first from your supervisor."

employment and employer-employee contractual relationships. At-will employment exists when the employment contract contains no specified term as to duration and can be terminated at the will of either the employer or employee. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1041 (Utah 1989). In the present case, the trial court declared that Cook was an at-will employee—a relationship that Cook does not contest. The parties were both free to terminate the employment contract at any time without cause. The trial court also reiterated the notion that at-will employees had " 'no right of action against employers for breach of employment contract upon being *discharged*.' " *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah 1991) (emphasis added) (citation omitted). Once again, Cook does not dispute the trial court's conclusion.

The trial court incorrectly assumed, however, that the only basis upon which an employee can sue an employer for breach of contract is discharge. The trial court stated that "since there has been *no discharge*, there exists an even stronger reason to disallow [a] suit for Breach of Contract." This statement, the underlying basis for the summary judgment, is unsupported by Utah case law.

■ An at-will employment relationship does not mean that there is no contract between employer and employee. The at-will rule merely "creates a presumption that any employment contract which has no specified term of duration is an at-will relationship." *Berube*, 771 P.2d at 1044. That Cook was an at-will employee does not negate the existence of the sick leave contract between her and Zions. *See Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991) (discussing at-will rule as one term, among many, of employment contract).

Consequently, whether Cook was an at-will employee is not dispositive, or even relevant, to Cook's claim for breach of her contract regarding sick leave. We therefore remand for a determination by the factfinder whether Zions breached the contract by denying Cook her right to accrue and use sick leave.

## Implied Covenant of Good Faith and Fair Dealing

■ When one party to a contract retains power or sole discretion in an express contract, it must exercise that discretion reasonably and in good faith. *Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 450 (Utah App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995). Zions contends, however, that Utah law does not recognize the implied covenant of good faith and fair dealing in the employment context. Zions relies on *Heslop v. Bank of Utah*, 839 P.2d 828 (Utah 1992), *Brehany v. Nordstrom, Inc.*, 812 P.2d 49 (Utah 1991), and *Loose v. Nature–All Corp.*, 785 P.2d 1096 (Utah 1989). Zions misconstrues the language of those cases. Those cases simply declare that the implied covenant of good faith and fair dealing does not limit an employer's right to terminate an at-will employee, not that the covenant does not exist at all. Those holdings comport with our earlier discussion of at-will employment. No Utah case has "held that there is not an implied covenant of good faith and fair dealing in either at-will or other sorts of employment contracts." *Dubois v. Grand Central*, 872 P.2d 1073, 1078 (Utah App.1994).

■ Zions correctly points out that implied covenants of good faith and fair dealing cannot create "new, independent rights or duties not agreed upon by the parties." *Heslop*, 839 P.2d at 840 (citation omitted). That is not what Cook alleges however. Cook merely contends that Zions acted unreasonably and thus violated its obligation of good faith and fair dealing by not permitting her to use sick leave accrued pursuant to an express contract. Under the covenant of good faith and fair dealing, the parties constructively promised that they would not intentionally do anything to impair the other party's right to receive the fruits of the contract. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991). Compliance with this covenant depends upon the "justified expectations of the parties." *Republic Group, Inc. v. Won–Door Corp.*, 883 P.2d 285, 291 (Utah App.1994). As we have previously held, "good faith and fair dealing are fact sensitive concepts, and

whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." *Id.* (citation omitted).

## CONCLUSION

The trial court erred in holding, as a matter of law, that there was no employment contract between Cook and Zions. The parties had an express contract that governed Cook's accrual and use of sick leave. The summary judgment therefore cannot stand. On remand, the trial court must determine, factually, whether Zions breached the express contract or the implied covenant of good faith and fair dealing by denying Cook her contractual right to accrue and use sick leave benefits.

Accordingly, we reverse the trial court's summary judgment in favor of Zions and remand for further proceedings consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.