**Wesley BADGER and Utah Land Inc., Plaintiffs and Appellants,**

v.

**BROOKLYN CANAL COMPANY and Robert L. Morgan, State Engineer, Defendants and Appellees.**

No. 970269.

Supreme Court of Utah.

July 7, 1998.

Rehearing Denied Sept. 9, 1998.

* See Utah R.App. P. 43

Paul M. Durham, Mark J. Gibb, Salt Lake City, for plaintiffs.

Jan Graham, Att'y Gen., Michael M. Quealy, John H. Mabey, Jr., Asst. Att'ys Gen., Salt Lake City, and Ken Chamberlain, Richfield, for defendants.

DURHAM, Associate Chief Justice:

Wesley Badger and Utah Land Inc. ("private well plaintiffs") appeal from the district court's grant of summary judgment in favor of the Brooklyn Canal Company and the State Engineer. The district court found that plaintiffs did not make known the nature of their private well rights in a protest hearing before the State Engineer and therefore waived the right to claim any impairment to private well rights. We affirm.

Brooklyn Canal Company is a nonprofit mutual water corporation formed for the purpose of delivering water to its Sevier County shareholders. Brooklyn draws a majority of its water directly from the Sevier River, with a small portion coming from artesian wells. In 1992, 72% of Brooklyn's shareholders approved a change in their irrigation system from a flood method to a high-pressure sprinkler method. Switching to a pressurized sprinkler system required Brooklyn to move its diversion point several miles upstream on the Sevier River in order to connect to the new underground pipes that ser-

vice the sprinkler system and to abandon its artesian wells. Pursuant to Utah Code Ann. § 73-3-3 (1989), Brooklyn applied to the State Engineer for approval of the change in diversion point. A group of Brooklyn shareholders protested the change application. The State Engineer held a hearing on May 11, 1993, in Richfield, Utah. After hearing testimony from Brooklyn and the protesters, the State Engineer issued a memorandum decision approving the change in diversion point.

Following the memorandum decision, some of the protesters filed a petition for de novo review in the district court pursuant to Utah Code Ann. §§ 73-3-14 and 63-46b-15 (1989). Thereafter, Brooklyn moved for summary judgment claiming that plaintiffs had no standing to bring the suit and that the rights of the private well plaintiffs would not be adversely affected by a change in the diversion point. The district court granted Brooklyn's motion for summary judgment on the grounds that (1) the shareholder plaintiffs did not have standing to challenge Brooklyn's change application; (2) switching irrigation methods does not require a change application; and (3) there were no disputed material facts as to whether the diversion would impair the private well plaintiffs' rights. Plaintiffs appealed the district court's grant of summary judgment.

On appeal, we affirmed the district court's decision with respect to its holding that the Brooklyn shareholders did not have standing to challenge Brooklyn's change application, but remanded for a determination of whether the private well plaintiffs had properly raised their claims either in the protest or in the hearing before the State Engineer. *Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 753 (Utah 1996)(*Badger I* ). Due to an inadequate record, we were unable to determine in that appeal whether the private well plaintiffs raised their claims before the State Engineer. *See id.* at 751-52. The State Engineer had submitted official tape recordings of the hearing and a transcript of the tapes, but the tapes and transcripts contained gaps and otherwise appeared incomplete. *See id.*

We further found in *Badger I* that the district court had erroneously assumed that

the private well plaintiffs' claims were properly before it and had improperly addressed the merits of whether the change application would adversely impact the private wells. *See id.* at 752. The district court had concluded that the diversion would not adversely impact the private wells, but we reversed and remanded because the district court based its conclusion on insufficient facts. *See id.* at 752-53.

On remand, the State Engineer moved for summary judgment, claiming that there were no disputed material facts as to whether the private well plaintiffs had raised the private well rights at the earlier hearing and that they had therefore waived any claimed impairment to their private wells. The State Engineer attached to his motion for summary judgment a corrected and complete transcript of the May 11, 1993, hearing. The State Engineer argued that the corrected transcript clearly shows that none of the protesters raised the issue of private wells at any time during the hearing and that the protests themselves do not reveal any claimed injury to private well rights.

The private well plaintiffs responded by asserting that the written protests and the hearing transcript adequately raised their private well claims. Plaintiffs further argued that even if the written protests and the hearing transcript did not reflect that they raised their private well claims, a dispute of material fact existed as to whether the issue was identified during the inaudible moments or gaps in the tape. In support of their claim, the private well plaintiffs submitted affidavits in which their prior counsel and one of the private well plaintiffs, Wesley Badger, asserted that they raised the private well issue at the hearing. Alternatively, the private well plaintiffs contended that even if they failed to raise their private well claims at the hearing or in the written protests, the State Engineer had constructive notice of the private well claims through its official water rights registry. Brooklyn countered that there was no dispute regarding the completeness of the transcripts and that the short gaps in the tape, which occurred during the time the tape was being turned over, were

not adequate for plaintiffs to have raised their private well claims.

The district court granted Brooklyn's motion for summary judgment, finding that the private well plaintiffs did not make known the nature of their private well rights nor the nature of their claims either during the hearing or through their written protests. The private well plaintiffs then brought this appeal.

Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). In reviewing the district court's grant of summary judgment, we view the facts and inferences therefrom in the light most favorable to the nonmoving party. *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 885 (Utah 1993). We review the district court's conclusions of law for correctness. *Id.*

Viewing the facts in the light most favorable to the private well plaintiffs, we conclude that they failed to adequately raise the issue of impairment to their private wells before the State Engineer. In a trial setting, to preserve an issue for appellate review, a party must first raise the issue in the trial court. *DeBry v. Cascade Enters.*, 935 P.2d 499, 501 (Utah 1997). That is, a trial court must be offered an opportunity to rule on an issue. *Katz v. Pierce*, 732 P.2d 92, 95 (Utah 1986) (citing *Meyer ex rel. Meyer v. Bartholomew*, 690 P.2d 558 (Utah 1984)). A trial court has the opportunity to rule if the following three requirements are met: (1) "the issue must be raised in a timely fashion;" (2) "the issue must be specifically raised;" and (3) a party must introduce "supporting evidence or relevant legal authority." *Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 130 (Utah Ct.App.1997) (citations and internal quotations omitted). The purpose of such requirements is to "put[ ] the judge on notice of the asserted error and allow[ ] the opportunity for correction at that time in the course of the proceeding." *Broberg v. Hess*, 782 P.2d 198, 201 (Utah Ct.App.1989). Issues not raised at trial are usually deemed

waived. *See State v. Labrum*, 925 P.2d 937, 939 (Utah 1996).

■■■ Similarly, a party seeking review of agency action must raise an issue before that agency to preserve the issue for further review. *See Pease v. Industrial Comm'n*, 694 P.2d 613, 616 (Utah 1984). It is well settled that "persons aggrieved by decisions of administrative agencies 'may not, by refusing or neglecting to submit issues of fact to such agencies, by-pass them, and call upon the courts to determine ... matters properly determinable originally by such agencies.' " *S & G, Inc. v. Morgan*, 797 P.2d 1085, 1087 (Utah 1990) (quoting *People v. Keith Ry. Equip. Co.*, 70 Cal.App.2d 339, 161 P.2d 244, 249 (1945)). However, as we noted in *Badger I*, "it may be inappropriate to impose the same level of strict waiver analysis that we have applied to issues or objections not raised before a trial court." *Badger I*, 922 P.2d at 751. Thus, this court does not apply a stringent waiver analysis to informal hearings before the State Engineer but instead will adopt a "level of consciousness" test, requiring a plaintiff to bring an issue to the fact finder's attention so that there is at least the possibility that it could be considered. *See U.S. Xpress, Inc. v. State Tax Comm'n*, 886 P.2d 1115, 1119 n. 7 (Utah Ct.App.1994) (stating that issue must be raised to " 'level of consciousness' such that the [Tax Commission could] consider it"). In this case, even under that less exacting standard, the private well plaintiffs failed to raise their private well claims either in the written protests or during the hearing.

■■ Each of the sixteen private well plaintiffs submitted identical written protests to the State Engineer. In sum, their protests read as follows:

> 5. The change application should be rejected for the reason that the approval thereof would impair the water rights of the protestants and other Sevier River water users.
>
> . . .
>
> 7. The proposed change would deprive the protestants and others of well water, presently used during the non-irrigation

season for stock water and domestic purposes.

The protests do not identify the wells the protesters allege will be impaired, nor do they identify what rights they may have in those wells. Furthermore, since each plaintiff submitted an identical protest, the allegations contained therein are general in nature, applying equally to any protester or any Sevier County water consumer. Such general and vague allegations cannot satisfy the requirement that the private well plaintiffs make known the nature of their rights and raise them before the State Engineer. The private well plaintiffs did not, through their written protests, raise any private well claims to a "level of consciousness" before the State Engineer.

■ The private well plaintiffs next assert that they raised their private well claims orally at the hearing. Attached to its motion for summary judgment the State Engineer appended a corrected and complete transcript of the May 11 hearing. That record is devoid of any mention of private well rights. Only two of the sixteen private well plaintiffs testified at the hearing, Grant Lefevre and Wesley Badger. During the hearing, neither the protesters nor' counsel mentioned any adverse impact on private wells. In fact, protester Lefevre, when discussing winter stock watering rights, stated that he had no sources of water other than Brooklyn Canal water. The affidavits of both Badger and plaintiffs' prior counsel concede that the corrected transcript contains no detailed mention of the private well rights they claimed to have raised numerous times at the hearing. Furthermore, the remaining fourteen private well plaintiffs made no statements at the hearing; their names were not mentioned, nor were there any references to private wells belonging to them. Consequently, on its face, the hearing transcript reflects that the private well plaintiffs failed to raise their private well claims during the hearing.

Plaintiffs also claim that even if we find that the record does not show an adequate reference to their private well claims, there is still a dispute of material fact as to whether they raised those claims during the gaps or inaudible moments on the recording.

Plaintiffs rely on the affidavits submitted by prior counsel and protester Badger to supplement the administrative record and establish the dispute. In those affidavits, both prior counsel and Badger claim that they raised private well rights in detail numerous times during the hearing and discussed the adverse impact of Brooklyn's change application on those private wells.

■ In order for extraneous evidence to be permitted to contradict the administrative record, the record on its face must reflect specific defects or procedural irregularities. *See State ex rel. Dep't of Community Affairs v. Utah Merit Sys. Council*, 614 P.2d 1259, 1261 (Utah 1980) (supplementing administrative record where witness' testimony went unrecorded due to tape recorder malfunction). The administrative record in this case has no such defects or irregularities. Moreover, neither affidavit suggests any irregularities in the record or offers any explanation for the record's failure to contain any reference to the private wells.

■ Plaintiffs point to numerous places in the transcript where they claim that they could have detailed their private well claims, including the ten-second intervals during the times the tapes were turned over. If gaps resulting from turning the tapes over were enough to allow a party to supplement the administrative record with affidavits, every audiotaped record would be subject to similar attack. There must be something more.

The private well plaintiffs also refer to places in the transcript where the speakers are not identified and to gaps in the transcript where a few words were garbled. However, those instances either occur when someone other than protesters or their counsel are speaking or involve an omission of only a few words at the beginning of a sentence. It is the nature of the recording process that a few words will inadvertently be missed; that fact alone cannot suffice to create a dispute of material fact regarding the accuracy of an administrative record. Thus, the private well plaintiffs failed to establish a dispute of material fact as to whether they raised their private well claims at the hearing.

Finally, plaintiffs argue that even if this court finds that they failed to raise their private well claims in their written protests or during the administrative hearing, this court should permit them to raise the issue for the first time in the district court because the State Engineer had constructive notice of their private well rights through the State water rights registry. Plaintiffs base their constructive notice argument on Utah Code Ann. § 73-3-18, which provides that once holders of water rights register with the State Engineer such registry "shall from time of filing of same in said office impart notice to all persons of the contents thereof." Utah Code Ann. § 73-3-18 (1989). However, as is the case for other recording statutes, compliance imparts notice only to those persons who have a duty to examine the records. *See, e.g., 4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 473 n. 9 (Utah Ct.App.1995) (stating that account debtor was not obligated to check U.C.C. filings); *Rothe v. Rothe*, 787 P.2d 534, 536–37 (Utah Ct.App.1990) (holding that spouse awarded home in divorce decree not on constructive notice of mortgage or lack thereof).

The State Engineer has no such duty. It is not the role of the State Engineer to divine the source of a protester's claim by sifting through his/her records. Requiring the State Engineer to scour his/her records to determine what, if any, water rights a given protester has that may be affected by a change application would eviscerate the requirement that it is the protesters' responsibility to make known the nature of their protest before the State Engineer. Since the State Engineer is not required to examine his/her water rights records, he/she did not have constructive notice of plaintiffs' private well claims. Summary judgment was properly granted by the trial court. We affirm.

HOWE, C.J., and ZIMMERMAN and RUSSON, JJ., concur in Associate C.J. DURHAM's opinion.

STEWART, J., concurs in the result.