2011 UT App 210

**COLUMBIA HCA and Zurich American Insurance Co., Petitioners,**

v.

**LABOR COMMISSION and Stewart Seely, Respondents.**

No. 20100788–CA.

Court of Appeals of Utah.

June 30, 2011.

Brad J. Miller, Greenwood Village, Colorado, for Petitioners.

Sandra N. Dredge, Provo, for Respondent Seely.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶1 Columbia HCA and its insurance carrier, Zurich American Insurance Co., (collectively, Columbia) appeal a final order of the Utah Labor Commission (the Commission), challenging the evidentiary basis and legal sufficiency of the Commission's decision to award Stewart Seely permanent total disability benefits. We affirm.

¶2 In November 2005, Seely filed an Application for Hearing with the Commission requesting that he be awarded permanent total disability benefits after sustaining two major, degenerative back injuries in the course of his employment with Columbia as a radiology technician.[1] Seely had been an employee of Columbia since 1988 and had worked as a radiology technician since 1972. At the time of filing, Seely was fifty-seven years old and had been collecting unemployment benefits since losing his job with Columbia in May 2003. The Administrative Law Judge (ALJ) conducted a formal hearing on the matter and issued Findings of Fact and Conclusions of Law. In her findings, the ALJ walked through the ten-year chronology of Seely's back problems, listing the major surgeries and procedures conducted as well as ten physicians' prognoses and

---

1. Seely was first injured in September 1996 when he "blew a disc" in his lower back while lifting a five-gallon container at work. Seely's second back injury occurred in February 2000 when he was transferring a 250- to 300-pound comatose patient from the x-ray table back to his bed.

recommended work restrictions before and after each procedure. In doing so, the ALJ highlighted the general roller-coaster-like progression of Seely's injuries, describing him as having "good days and bad days." She found that Seely's "activities of daily living were significantly hindered by his back condition" because he "walks slowly and hesitantly[,] . . . can sit/stand for 30 minutes at a time," and can lift a maximum of only thirty-five pounds. Upon these facts, the ALJ concluded that Seely's "back injuries prevent him from performing the essential function of lifting required of a radiology technician" and subsequently "entered a preliminary finding of permanent total disability, subject to Columbia's right to submit a [reemployment] plan." *See generally* Utah Code Ann. § 34A–2–413(5) (Supp.2010) (outlining the employer's right to submit a reemployment plan before an award of permanent total disability benefits is considered final).

¶ 3 Columbia submitted a reemployment plan aimed at returning Seely to work as a radiology technician subject to a ten-pound lifting restriction. An additional hearing was held to consider the plan. Columbia's vocational consultant, who prepared the reemployment plan, and Seely testified at this hearing. Seely testified extensively as to the daily lifting, twisting, pushing, and pulling requirements of his former radiology position and explained that finding another job in his field that could accommodate a ten-pound lifting restriction would be extremely difficult when the lead aprons alone may weigh over ten pounds.[2] Seely also testified that his radiology license had lapsed since the previous hearing. The vocational consultant agreed that most radiology jobs require an employee to regularly lift twenty pounds but stated that he had not called any potential employers to determine if a ten-pound lifting restriction could be accommodated. Neither Columbia nor the vocational consultant contacted Seely while drafting the reemployment plan. Additionally, the vocational consultant was never provided a copy of the ALJ's findings. Instead, the consultant relied on a copy of Seely's resume; Seely's extensive medical records; the Dictionary of Occupational Titles, which provided a "generic job analysis of [Seely's] position"; and a functional capacity exam—a two-day physical exam in which a physical therapist conducted various tests on Seely.

¶ 4 Ultimately, the ALJ found Columbia's plan to be "inadequate because it did not conform to Mr. Seely's physical limitations and did not establish that work was available within his capabilities." Specifically, she found that the reemployment plan considered reemployment only as a radiology technician, did not take into account the limitations imposed by the various medications Seely takes daily, and failed to address Seely's lapsed radiology license, his sit/stand restrictions, and his need to take time off as his ailments demand. Thus, without an adequate plan for Seely's reemployment, the ALJ concluded "that Mr. Seely was entitled to a final award of total disability compensation."

¶ 5 Columbia moved for administrative review of this decision, challenging the evidentiary basis and legal sufficiency of the ALJ's Order of Permanent and Total Disability. Specifically, Columbia argued that it was unable to develop an adequate reemployment plan because the ALJ failed to identify Seely's precise medical restrictions and failed to conclusively identify which part of the ten-year chronology of Seely's medical history referenced in her findings was relevant to Seely's current state of health.[3] Columbia further argued that the ALJ erred by rejecting its reemployment plan without "finding whether successful rehabilitation is possible." The Commission affirmed the ALJ's decision, stating that the reemployment plan was

**2.** The details regarding Seely's daily tasks as a radiology technician were discussed to some extent in the original hearing but were not enumerated in the ALJ's findings.

**3.** For instance, Columbia points to the findings' reference to several physicians' recommendations of lifting restrictions that varied over the course of Seely's medical history including, a thirty-pound lifting restriction recommended in 2001 and 2002, a fifty-pound lifting restriction recommended in 2003 and 2004, and a thirty-five-pound lifting restriction recommended in 2006. Columbia claims these "conflicting restrictions" constitute inconsistencies in the record that hampered its ability to develop an adequate reemployment plan.

properly rejected and that the ALJ's findings were not conflicting or ambiguous. Additionally, the Commission stated that if Columbia felt there were ambiguities in the record that hindered its ability to develop an adequate reemployment plan, it should have sought clarification from the ALJ before developing and submitting a plan. Columbia now appeals the Commission's Order Affirming the ALJ's Decision to award permanent total disability compensation to Seely, making essentially the same arguments as it did in its Motion for Review—that the Commission, like the ALJ, "erred by failing to resolve the conflicts in the evidence regarding [Seely]'s work restrictions" and by "fail[ing] to make the requisite findings regarding whether rehabilitation was possible."

¶ 6 We first consider whether Columbia adequately preserved its arguments on appeal. Although Seely raises a convincing preservation argument[4] and, in fact, the Commission seems to have rejected Columbia's arguments on similar grounds, this position misinterprets Utah case law on preservation. Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below—be it a trial court or an administrative tribunal. *See ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶¶ 9–12, 211 P.3d 382 (explaining three general scenarios when the preservation rule applies, including when an agency's statute does not require preservation but the issues could have been resolved if raised during the administrative process). In an administrative proceeding, the preservation doctrine requires the challenged issue to initially be brought to the fact finder's attention "so that there is at least the possibility that it could be considered." *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998). "It is well settled that per-

sons aggrieved by decisions of administrative agencies may not, by refusing or neglecting to submit issues of fact to such agencies, by-pass them, and call upon the courts to determine ... matters properly determinable originally by such agencies." *Id.* (omission in original) (internal quotation marks omitted); *see also Whitear v. Labor Comm'n*, 973 P.2d 982, 985 (Utah Ct.App. 1998) ("It is well settled that issues not raised before the Commission are waived on appeal."). In failing to raise these challenges to the ALJ before developing a reemployment plan, Columbia's actions may seem contrary to one of the primary purposes of the preservation doctrine—to prevent "a party from avoiding the issue at trial for strategic reasons only to raise the issue on appeal if the strategy fails."[5] *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 20, 163 P.3d 615 (internal quotation marks omitted); *see also Bailey–Allen Co. v. Kurzet*, 945 P.2d 180, 185 (Utah Ct.App. 1997) (stating that a party cannot take one position in the proceedings below and then argue the opposite position on appeal). However, as both the ALJ and the Commission have fact-finding authority, *cf.* Utah Code Ann. § 34A–1–303(4)(b)–(c) (Supp. 2010) (explaining that when reviewing an appeal from an administrative decision, a reviewing body may request supplemental evidence even though it may not conduct a de novo trial of the case), Columbia need only to have raised the issues currently on appeal to either the ALJ or the reviewing Commission for the issues to be properly preserved. We therefore determine that Columbia satisfied the preservation requirement by "raising [the] issue at the administrative level[ so] 'either the administrative law judge or the Commission could have adjudicated the issue,' " *see Ashcroft v. Industrial Comm'n*, 855 P.2d 267, 268 (Utah Ct.App.1993) (quoting *Pease v. Industrial*

---

4. Specifically, Seely argues that "the appropriate time" for Columbia to have objected to the adequacy of the ALJ's findings, and thereby properly preserve this argument, was "before the creation of a reemployment plan" rather than after the ALJ's rejection of its reemployment plan and award of permanent total disability benefits to Seely.

5. Indeed, Columbia did not object during the first hearing while evidence was presented, nor did it object or seek clarification after the ALJ issued her findings, or even during the subsequent hearing to consider the reemployment plan. It was only after the ALJ rejected Columbia's reemployment plan as inadequate and issued a finding of total disability that Columbia complained that the findings were ambiguous.

*Comm'n*, 694 P.2d 613, 616 (Utah 1984)); *accord Whitear*, 973 P.2d at 985; *see also Utah Chptr. of the Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 29 n. 10, 226 P.3d 719 (determining that the Sierra Club satisfied preservation requirements by raising an issue in its second request for agency action that the Air Quality Board ruled on in its final order).

¶ 7 We turn next to the substance of Columbia's claims. Columbia argues that the Commission erred in affirming the ALJ's findings because the findings did not clearly identify Seely's physical limitations and, that as a result, Columbia was unable to prepare an adequate reemployment plan.

¶ 8 The Utah Administrative Procedures Act (UAPA) determines the standard of review for a formal adjudicative hearing. *See* Utah Code Ann. § 34A–2–801(7) (Supp.2010) (explaining that appeals from final agency actions in workers' compensation cases are guided by the UAPA); *accord Whitear*, 973 P.2d at 984 ("The applicable standard of review for a formal adjudicative hearing is determined by UAPA."). *See generally* Utah Code Ann. § 63G–4–403 (2008) (identifying requirements for obtaining judicial review of formal administrative adjudications). An appellate court may grant relief under the UAPA "only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by ... [an] agency action [that] is based upon a determination of fact ... that is not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G–4–403(4), (4)(g).

¶ 9 Thus, in order to reverse, we must determine that the ALJ's findings were not supported by substantial evidence and that Columbia was substantially prejudiced by the Commission's adoption of those findings. *See id.* A determination of substantial prejudice is required as a prerequisite to appellate review to "ensure that a court will not issue advisory opinions reviewing agency action when no true controversy has resulted from that action." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 669 (Utah 1991). Substantial prejudice requires that

"the person seeking review of an agency action must suffer substantial prejudice as a result of that action before a court may grant relief from the action." *Id.; see also Cache Cnty. v. Property Tax Div.*, 922 P.2d 758, 768 (Utah 1996) ("[T]he aggrieved party must be able to demonstrate how the agency's action has prejudiced it."). Substantial prejudice will not be found where the party seeking review "was given full and fair consideration of the issues" by the agency. *See Commercial Carriers v. Industrial Comm'n*, 888 P.2d 707, 713 (Utah Ct.App.1994).

¶ 10 Here, Columbia's argument ignores this fundamental requirement. Had Columbia actually relied on the findings in developing its reemployment plan, we would be inclined to conduct an analysis of whether those findings were, in fact, internally inconsistent, ambiguous, or otherwise unsupported by "substantial evidence." However, Columbia's inability to develop an adequate reemployment plan is not attributable to the findings whatsoever. To the contrary, the reemployment plan was rejected primarily because the plan ignored the findings. For instance, the plan considered returning Seely to work only as a radiology technician when the findings specifically concluded that Seely cannot perform "the essential function of lifting required of a radiology technician." The findings also concluded that Seely is limited by his frequent need for time off, by his sit/stand restrictions, and by the narcotic pain medications he takes. The reemployment plan did not consider Seely's need for a flexible part-time schedule that could accommodate his fluctuating daily symptoms, nor did it address Seely's inability to sit/stand for much more than thirty-minute intervals, or the side effects narcotic pain medications may have on his job performance. Furthermore, the ALJ cited the reemployment plan's failure to consider Seely's lapsed radiology license as an additional shortcoming. Although this new development could not possibly have been a part of the ALJ's findings because the license did not lapse until some time after the ALJ issued her findings, Columbia nonetheless could have simply contacted Seely while drafting the reemployment plan—a practice

its vocational consultant described as routine, especially in situations where the injured employee has expressed a willingness to participate in the reemployment process, a sentiment Seely expressed clearly and repeatedly. The reemployment plan also established a ten-pound lifting restriction. The ALJ noted that the problem with this weight limit was not that it was more restrictive than the thirty-five-pound lifting restriction she established in the findings, but that neither Columbia nor its vocational consultant had actually found any radiology jobs able to meet this restriction. In fact, the consultant found that most radiology jobs required an ability to lift twenty pounds. Columbia argued at the hearing that the reemployment plan was meant to target positions in clinical and office settings where the equipment would not be mobile and the patients would presumably be able to move themselves into position. Columbia did not contact any radiology labs in these types of settings to determine whether a ten-pound lifting restriction could actually be accommodated.[6] Thus, the majority of the defects cited by the ALJ in rejecting the plan were not ones that could have been cured if the findings had been clarified at any point in the proceedings. Therefore, because the harm for which Columbia seeks redress—the ALJ's rejection of its reemployment plan—was ultimately a result of Columbia's own mistakes in drafting the plan, rather than a product of any ambiguity in the findings, we affirm the Commission's Order. *See generally Savage Indus.*, 811 P.2d at 669 (noting that the party "seeking review of an agency action must suffer substantial prejudice as a result of that action before a court may grant relief").

¶ 11 Next, we turn to Columbia's argument that the Commission erred when it affirmed the ALJ's findings "regarding whether successful rehabilitation was possible." The award of permanent total disability is a multi-step process. *See generally* Utah Admin. Code R612–1–10(C) (outlining workers' compensation rules regarding claims of permanent total disability). First, the employee bears the burden of proving that he was injured in the course of employment, that the injuries are permanently disabling, and that the work accident caused his disabling injury. *See* Utah Code Ann. § 34A–2–413(1)(b) (Supp.2010). Next, the employee must prove that he is no longer gainfully employed, that his impairment limits his ability to conduct basic work activities, that the impairment "prevent[s] the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident," and that "the employee cannot perform other work reasonably available, taking into consideration the employee's: (A) age, (B) education, (C) past work experience, (D) medical capacity, and (E) residual functional capacity." *Id.* § 34A–2–413(1)(c). Once the ALJ makes an initial finding of permanent total disability, the employer is given the opportunity to submit a reemployment plan. *See id.* § 34A–2–413(5)(a). The reemployment plan should be "prepared by a qualified rehabilitation provider [and be] reasonably designed to return the employee to gainful employment."[7] *Id.* § 34A–2–413(5)(a)(ii)(A).

¶ 12 Next, the ALJ will hold a hearing to consider evidence regarding rehabilitation and review the reemployment plan to determine whether other work is reasonably available, *see id.* § 34A–2–413(5)(a)(iii), which is defined as work that is within a "typical or

6. The vocational consultant contacted the advisor of the radiology program at Salt Lake Community College to discuss radiology job prospects for someone with a ten-pound lifting restriction. In that conversation, the advisor confirmed that those jobs do exist: "[Y]ou just have to be able to find them. They're not as numerous. . . ." Seely testified at the reemployment hearing that even if this type of position existed, the ten-pound lifting restriction would be hard to accommodate on a regular basis in light of the daily risk that patients being x-rayed may suddenly pass out, for example, when asked to hold their breath for a chest x-ray, or may suddenly fall due to the nature of the injury for which they are being x-rayed.

7. The statute also states that the reemployment plan "may include . . . (A) retraining; (B) education; (C) medical and disability compensation benefits; (D) job placement services; or (E) incentives calculated to facilitate reemployment." Utah Code Ann. § 34A–2–413(5)(e) (Supp.2010).

acceptable commuting distance"; is "regular, steady, and readily available; and ... provides a gross income at least equivalent to ... [t]he current state average weekly wage ... [or t]he wage the claimant was earning at the time of the accident," Utah Admin. Code R612–1–10(D). The ALJ's finding of "whether other work is 'reasonably available' is a factual determination" and, "the correct standard of review is substantial evidence." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints,* 2007 UT 42, ¶¶ 32, 35, 164 P.3d 384. "Substantial evidence is more than a mere scintilla of evidence ... though something less than the weight of the evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989) (omission in original) (citation and internal quotation marks omitted). "In applying the substantial evidence test, we review the whole record before the court...." *Id.* (internal quotation marks omitted). A whole record review requires a court to consider both the evidence supporting and the evidence detracting from the Commission's findings and "necessarily requires that a party challenging the [Commission's] findings of fact must marshal[ ] all of the evidence supporting the findings." *Id.; see also State v. Boyd,* 2001 UT 30, ¶ 13, 25 P.3d 985. Marshaling requires the party challenging the findings to provide the court with "the evidence in support of the verdict and then [to] demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *Boyd,* 2001 UT 30, ¶ 13, 25 P.3d 985 (internal quotation marks omitted); *see also West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991) (comparing the marshaling requirement to playing devil's advocate). Failure to satisfy the marshaling requirement gives the appellate court the ability to "assume that the evidence supports the trial court's findings" and the "grounds to affirm the ... findings on that basis alone." *Chen v. Stewart,* 2004 UT 82, ¶ 80, 100 P.3d 1177; *see also Whitear*

*v. Labor Comm'n,* 973 P.2d 982, 985 (Utah Ct.App.1998) (stating that when challenging the labor commission's findings of fact in a workers' compensation case where the petitioner failed to properly marshal the evidence, the court of appeals may decline to consider the petitioner's challenge to the findings of fact and affirm the commission's findings).

¶ 13 Here, Columbia argues that the statute requires the ALJ to determine whether, in general, successful rehabilitation is possible rather than determine more specifically, as the ALJ did in this case, whether the reemployment plan and evidence submitted in the reemployment hearing demonstrate that other work is "reasonably available." "[T]he plain meaning that the Legislature intended [by the language] ... in section 35–1–67(6)[ [8] ] was to have the Commission independently evaluate and approve the employer's reemployment plan." *Color Country Mgmt. v. Labor Comm'n,* 2001 UT App 370, ¶ 21, 38 P.3d 969, *aff'd,* 2004 UT 12, 84 P.3d 1201. Here, not only does Columbia misinterpret the ALJ's statutory obligation as requiring a general, overall determination regarding rehabilitation, but it also arguably fails to satisfy its marshaling requirement by stating only the facts that support its position and by jumbling the chronology employed by the ALJ in order to make the facts appear even more ambiguous. The Commission, by way of adopting the ALJ's findings, cites Seely's medical history to provide a chronology of the progression of his back problems, which happens to be marked by periods of remission and regression. The contradictions that Columbia finds in Seely's medical history are confounding when taken out of the chronological context used by the ALJ. But when viewed as the ALJ intended, it is clear that the findings paint a time-line of Seely's medical history. The most recent medical findings in that chronology clearly spell out Seely's physical restrictions and the foundation upon which the ALJ relied in making her determination of permanent total disability. Thus, we believe the Commission's decision

---

**8.** This section is now codified as Utah Code section 34A–2–413(5)(a). *See* Utah Code Ann. § 34A–2–413(5)(a) & hist. (Supp. 2010).

to affirm the ALJ's findings is supported by substantial evidence.

¶ 14 Columbia had the opportunity to draft a reemployment plan aimed at helping Seely overcome the limitations identified in the findings but failed to take the findings into consideration when doing so. In turn, Columbia developed an inadequate reemployment plan that failed to demonstrate that other work was reasonably available to Seely. Therefore, we affirm the Commission's Order rejecting the reemployment plan and affirming the ALJ's Order of Total and Permanent Disability.

¶ 15 WE CONCUR: J. FREDERIC VOROS JR., and MICHELE M. CHRISTIANSEN, Judges.