2013 UT App 286

**Tysha R. COOK and Tristan Ritchie, Petitioners,**

v.

**LABOR COMMISSION, Zions Bank Corporation, and Workers Compensation Fund, Respondents.**

No. 20111030–CA.

Court of Appeals of Utah.

Nov. 29, 2013.

Roger H. Hoole and David W. Parker, Attorneys for Petitioners.

Alan L. Hennebold, Attorney for Respondent Labor Commission Eugene C. Miller Jr., Attorney for Respondents Zions Bank Corporation and Workers Compensation Fund.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judges GREGORY K. ORME and CAROLYN B. McHUGH concurred.

Opinion

CHRISTIANSEN, Judge:

¶ 1 Petitioners Tysha R. Cook and Tristan Ritchie seek review of a final order entered by the Labor Commission Appeals Board denying their claims for compensation based upon the Utah Workers Compensation Act and the Utah Occupational Disease Act. We decline to disturb the Appeals Board's decision.

BACKGROUND

¶ 2 In late 1993, Gina Cook was an employee working in the data processing center of Zions Bank (the Bank). Cook's department became very busy because the Bank was converting to a new computer system and simultaneously undergoing a merger with another bank. The combination of these events created a heavy workload that required Cook to work overtime hours starting February through May 1994. The Bank instructed its employees that they should not request any time off during this period due to the increased demands.

¶ 3 At some point in November 1993, Cook noticed a lump on her lower lip. The Bank gave Cook partial time off on February 1, 1994, to visit with an ear, nose, and throat specialist, who recommended that Cook schedule an appointment at a hospital for surgery to remove the lump, but did not consider the procedure to be urgent. The surgery would require Cook to miss an entire day of work. Cook immediately began asking the Bank for permission to take a full day off to undergo the surgery, but her requests were repeatedly denied. It was not until April 22, some twelve weeks later, that the Bank granted Cook an entire day off for the procedure, but she fell sick that day and was unable to undergo surgery. Cook tried to reschedule for May 6—the hospital's next available date—but the Bank did not grant her another full day off until May 20, the date Cook finally underwent surgery.

¶ 4 Biopsy results from the surgery revealed that Cook had a rare, aggressive form of malignant melanoma. Cook sought additional evaluation and treatment in an attempt to halt the cancer's progress. Unfortunately,

the treatments were ultimately unsuccessful and Cook died on March 13, 1996.

¶ 5 Following her death, Cook's daughters, Krista Rae Cook and Tiffani Cherie Cook, initiated several lawsuits against the Bank.[1] In the first of these suits, *see Cook v. Zions First Nat'l Bank (Cook II )*, 2002 UT 105, 57 P.3d 1084, Cook's daughters asserted that the Bank's refusal to grant her requests for sick leave breached Cook's employment contract and resulted in Cook's wrongful death. *Id.* ¶ 6. The Bank filed a motion to dismiss, arguing that the wrongful death claim was subject to the exclusive jurisdiction and exclusive remedy provisions of the Utah Workers' Compensation Act (UWCA) and that the Labor Commission was the proper adjudicative authority. *Id.* The Bank also argued that breaches of contract cannot give rise to wrongful death actions. *Id.* The district court granted the motion to dismiss, determining that the UWCA barred the suit. *Id.* The case was appealed to the Utah Supreme Court, which affirmed the district court, holding that "the plain language of the UWCA precludes plaintiffs' wrongful death claim" and that the UWCA "provides the exclusive remedy available to them." *Id.* ¶¶ 13–14.

¶ 6 Cook's daughters also sued the Bank for breach of contract. *See Cook v. Zions First Nat'l Bank (Cook III )*, 2004 UT App 69U, 2004 WL 530730. In that case, this court concluded that, consistent with the supreme court's holding in *Cook II*, Cook's daughters' claims were barred by the exclusive remedy provision of the UWCA because they were " 'essentially tort claims masquerading as breach of contract claims.' " *Id.* para. 4 & n. 2 (quoting *Shattuck–Owen v. Snowbird Corp.*, 2000 UT 94, ¶ 20, 16 P.3d 555).

¶ 7 Because both *Cook II* and *Cook III* held that the only available remedy for Cook's death was an action under the UWCA, Cook's estate, now represented by her granddaughters, Tysha R. Cook and Tristan Ritchie (Petitioners), filed a claim for dependent benefits with the Labor Commission (the Commission) on March 17, 2006. *See generally* Utah Code Ann. § 34A–1–301 (LexisNexis 2011)[2] ("The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers."). Petitioners requested benefits pursuant to the UWCA, or alternatively, pursuant to the Utah Occupational Disease Act (UODA), which also comes under the exclusive jurisdiction of the Commission.

¶ 8 The case was referred to an Administrative Law Judge (the ALJ) who held an evidentiary hearing and made extensive factual findings regarding the work environment at the Bank during the months Cook sought leave for her needed surgery. The ALJ also convened a medical panel composed of three physicians whose practice specialties were in the fields of neurology, dermatology, and dermatopathology. The panel members examined Cook's medical records and pathology slides and submitted a report containing their medical opinions. The ALJ ultimately determined that the UWCA did not apply to Petitioners' claims; rather, the ALJ interpreted the UODA to be the governing statute. Relying heavily upon the medical panel's report, the ALJ concluded that Petitioners were not entitled to benefits under the UODA because Petitioners had failed to establish medical causation linking the Bank's conduct to Cook's cancer and death.

¶ 9 Petitioners filed a motion for review before the Labor Commission Appeals Board (the Board) challenging the ALJ's determination that the UWCA did not apply. The Board observed that Petitioners' "motion for

---

1. Prior to Cook's death, Cook sued the Bank for breach of contract and breach of the implied covenant of good faith and fair dealing. *See Cook v. Zions First Nat'l Bank (Cook I )*, 919 P.2d 56, 58–59 (Utah Ct.App.1996). The district court granted summary judgment in favor of the Bank. *Id.* at 59. Cook died while the case was pending on appeal. *Id.* We reversed and remanded. *Id.* at 61. The lawsuits discussed hereafter—*Cook II* and *Cook III*—stem from this initial litigation.

2. Because the provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

review [did] not challenge [the ALJ's] determination that Mrs. Cook's death [was] not compensable as an occupational disease." Accordingly, the Board did not review the ALJ's determination under the UODA. Instead, the Board found that even if the UWCA applied to Petitioners' claim, Cook's death was not compensable because Petitioners had failed to establish medical causation. Like the ALJ, the Board relied heavily on the medical panel's report in coming to this same conclusion. Petitioners now seek judicial review of the Board's decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 The central issue for our review is whether the Board's determination that Petitioners failed to establish medical causation linking the Bank's conduct to Cook's cancer and death was adequately supported by substantial evidence. Because "[m]edical causation is an issue of fact," we "review the Commission's findings under the substantial evidence standard" and "will sustain the Commission's factual determination concerning medical causation only if its finding is adequately supported by the record." *Chase v. Industrial Comm'n*, 872 P.2d 475, 479 (Utah Ct.App.1994); *accord* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011); *Murray v. Labor Comm'n*, 2013 UT 38, ¶ 19, 308 P.3d 461. In other words, the Board's factual findings are "accorded substantial deference and will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible." *See Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 526–27 (Utah 1988).[3]

■ ¶ 11 Petitioners also dispute the Board's decision not to apply the UODA, claiming it erred by not sending the issue of medical apportionment to the medical panel a second time. However, "Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below—be it a trial court or an administrative tribunal." *Columbia HCA v. Labor*

*Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640. Our inquiry is therefore limited by whether this issue was adequately preserved before the commission for our review.

## ANALYSIS

I. The Board's Determination that Petitioners Failed to Prove Medical Causation Under the UWCA Is Supported by Substantial Evidence.

■ ¶ 12 Under the UWCA, "[a]n employee ... who is injured ... by accident arising out of and in the course of the employee's employment ... shall be paid ... compensation for loss sustained on account of the injury...." Utah Code Ann. § 34A-2-401(1) (LexisNexis 2011). "This statute creates two prerequisites for a finding of a compensable injury. First, the injury must be 'by accident.' Second, the language 'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986). To demonstrate the requisite causal connection, the petitioning party must prove both legal causation and medical causation. *See id.* at 25. However, if a party fails to establish medical causation, analysis of the legal causation element is unnecessary. *Hymas v. Labor Comm'n*, 2008 UT App 471, ¶ 8, 200 P.3d 218; *see also Lancaster v. Gilbert Dev.*, 736 P.2d 237, 239 (Utah 1987). To establish medical causation, a "claimant must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability." *Allen*, 729 P.2d at 27.

■ ¶ 13 Here, the Board affirmed the ALJ's denial of benefits but did so on the basis that Petitioners "failed to establish medical causation" under the UWCA. The Board did not consider, analyze, or interpret the statutory language or the applicability of the UWCA because it found the causation issue to be fully dispositive, stating, "For purposes of discussion only, the [Board] ac-

---

**3.** Petitioners also argue that the ALJ, in light of the supreme court's decision in *Cook II*, erred in interpreting the UWCA as inapplicable to their claim. Because the issue of medical causation is dispositive of Petitioners' UWCA-based claim, we need not address this issue. Even if we were to conclude that the UWCA applied, Petitioners' claim would nevertheless fail because we uphold the Board's finding that Petitioners did not establish medical causation. *See infra* ¶ 21.

cepts Petitioners' contention that Mrs. Cook's death can be evaluated as a work-related accidental injury under the [UWCA]. Nevertheless, ... the [Board] concludes that Mrs. Cook's death is not compensable under [the UWCA]." In reaching this conclusion, the Board relied heavily upon the medical panel's report.

¶ 14 We conclude that the medical panel's report constitutes substantial evidence supporting the Board's determination that no medical causation existed linking the Bank's conduct to Cook's cancer and death. *See Chase v. Industrial Comm'n*, 872 P.2d 475, 479 (Utah Ct.App.1994) ("While it is the ALJ who initially hears the evidence, the [Board] is the ultimate fact finder."). "Substantial evidence is more than a mere scintilla of evidence ... though something less than the weight of the evidence." *Grace Drilling Co. v. Board of Review of the Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct.App.1989) (omission in original) (citation and internal quotation marks omitted). "An administrative law decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted).

¶ 15 The medical panel was composed of three experienced physicians with specializations in neurology, dermatology, and dermatopathology. In reaching their conclusion, the panel members examined Cook's medical records, which were gathered from nine providers and medical facilities and comprised nearly 400 pages. Two of the panel members also reviewed the available pathology slides of Cook's tumor. In addition, the panel members undertook a careful review of relevant medical literature and medical studies. After doing so, they concluded that no medical causation linked Cook's death to the Bank's denial of her leave. The report's final answer explains,

The panel can assign no percentage of aggravation, acceleration, mortality, morbidity, or other contribution to Gina Cook's cancer as a result of the above listed delays in medical treatment. Assigning such a percentage represents a speculation unsupportable by local experience or reference to the medical literature.... Given that Ms. Cook's malignancy was aggressive, it can be assumed that some degree of tumor growth and spread occurred between February 19, 1994, and the date of the scheduled but cancelled biopsy on April 22, 1994, just over 2 months, and a subsequent short period in May 1994. In order to assess the role of this delay, needed evidence is lacking and unobtainable.... We have no way of knowing, or guessing if Ms. Cook would have accepted any surgical recommendations in February of 1994, and whether or not this would have made any difference. Lacking this information, and lacking any supportable way of even making an educated guess, any conclusion reached is based on speculation only, and does not rise to the level of reasonable medical probability, especially given the inherently aggressive nature of this cancer.

The panel's report also explains that Cook's form of cancer is extremely rare, highly aggressive, and carries a very low survival rate. The report states, "With this malignancy, one does not speak of cure. 10–year survivals are very few."

¶ 16 In contrast, Petitioners direct our attention to a joint medical report prepared by two physicians that was presented to the ALJ and considered by the medical panel.[4] The joint report authors opined that based upon their review of Cook's medical records and scientific literature and based upon their education and experience, there was a "reasonable degree of medical probability that the delay in diagnosing Gina Cook's cancer caused a statistically and clinically significant difference in her prognosis, treatment needs and options, and her quality of life." Petitioners argue that this alternative medical

---

4. One of the report's authors is a physician and associate professor in the Departments of Dermatology and Internal Medicine at the University of Utah School of Medicine. The other is a physician, surgeon, and associate professor in the Division of Otolaryngology, Head and Neck Surgery at the University of Utah School of Medicine.

opinion establishes that the Bank's refusal to allow Cook to immediately seek medical care aggravated her cancer.

¶ 17 The medical panel examined this report in its review of Cook's case and noted that because its authors "are trusted and accomplished members of the medical community whose opinion[s] carries weight, [the panel] carefully considered their conclusions." Nevertheless, the panel ultimately disagreed with the report, concluding that it could assign "no percentage of aggravation, acceleration, mortality, morbidity, or other contribution to Gina Cook's cancer" as a result of the Bank's conduct.

¶ 18 Given the thoroughness of the medical panel's report, it was certainly reasonable for the Board to accept it as evidence supporting a finding of no medical causation. The report was made by neutral medical experts who relied upon their own experience as well as the medical literature in rendering their opinions. The panel members reviewed the available medical evidence, including all available diagnostic results. The panel members also addressed the questions posed by the ALJ and analyzed them in terms of reasonable medical probability based upon detailed factual findings derived from the evidentiary hearing before the ALJ, Cook's medical treatment history, and the relevant medical literature. Finally, the Board characterized the panel's report as "comprehensive, well-reasoned," "authoritative," and "persuasive." We conclude that the panel report is considerably more than a "scintilla of evidence" and constitutes substantial evidence in support of the Board's medical causation finding. Therefore, even if the UWCA applies, Petitioners' claim still fails for lack of medical causation because a reasonable mind would "accept as adequate the evidence supporting the [Board's] decision." *See Martinez*, 2007 UT 42, ¶ 35, 164 P.3d 384.

¶ 19 While Petitioners have identified a possible conflict in the evidence, "[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 (alteration in original) (citation and internal quotation marks omitted). Consequently, our substantial evidence "assessment does not constitute a de novo review or a re-weighing of the evidence." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 21, 38 P.3d 291 (citation and internal quotation marks omitted). Indeed, "even if we may have reached a different conclusion than the Board did, we will not substitute our judgment where the Board's findings are supported by substantial evidence." *Prosper Team, Inc. v. Department of Workforce Servs.*, 2011 UT App 246, ¶ 7, 262 P.3d 462 (citing *Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 524–27 (Utah 1988)).

¶ 20 The only conflicting evidence in the record that Petitioners have identified is the joint medical report. Even though the report is relevant, "[a]s the fact finder, the [Board] may choose to give certain evidence more weight than other evidence." *See Virgin v. Board of Review of the Indus. Comm'n*, 803 P.2d 1284, 1289 (Utah Ct.App. 1990). It is the Board's responsibility to resolve conflicts in the evidence that come before it. *See EAGALA*, 2007 UT App 43, ¶ 16, 157 P.3d 334. Here, the Board had access to Petitioners' joint medical report and found it worthy of consideration but ultimately unpersuasive. The Board instead relied on the conclusions reached by the medical panel and found that no medical causation existed, thereby resolving the evidentiary conflict. Because the medical panel's report constitutes substantial evidence in this case, it would be improper for us to ignore the Board's conclusion and to substitute our own judgment. *See Prosper Team*, 2011 UT App 246, ¶ 7, 262 P.3d 462. We therefore decline to disturb the Board's finding that Petitioners did not establish medical causation here.

## II. Petitioners' UODA Claim Is Not Preserved.

¶ 21 In the alternative, Petitioners argue that the Board erred by not sending the issue of medical apportionment to the medical panel a second time as ostensibly

required by the UODA. However, Petitioners have not adequately preserved this issue for our review. In order to preserve an issue for review in an administrative proceeding, a party "need only to have raised the issues currently on appeal to either the ALJ or the reviewing Commission." *Columbia HCA v. Labor Comm'n,* 2011 UT App 210, ¶ 6, 258 P.3d 640. The challenged issue must "initially be brought to the fact finder's attention 'so that there is at least the possibility that it could be considered.' " *Id.* ¶ 6 (quoting *Badger v. Brooklyn Canal Co.,* 966 P.2d 844, 847 (Utah 1998)). Though it is true that Petitioners pleaded an alternate claim under the UODA in their initial application before the ALJ, their specific claim for medical apportionment was never presented to either the ALJ or to the Board. As the Board noted in its decision, "Petitioners' motion for review does not challenge [the ALJ's] determination that Mrs. Cook's death is not compensable as an occupational disease." Petitioners have therefore failed to preserve this issue for review because they could have raised it before either the ALJ or the Board. *See ABCO Enters. v. Utah State Tax Comm'n,* 2009 UT 36, ¶ 11, 211 P.3d 382 ("[T]he preservation rule applies when the issue raised on [review] could have been resolved in the administrative setting....").[5]

## CONCLUSION

¶ 22 The Board's determination that no medical causation linked the Bank's conduct to Cook's cancer and death is supported by substantial evidence. Therefore, Petitioners cannot recover under the UWCA and Petitioners' UODA claim is unpreserved. Accordingly, we decline to disturb the Board's decision.

---

**5.** Petitioners also request our review of whether the Board erred by not shifting the burden of proof for medical apportionment to the Bank, claiming the Bank was responsible for Cook's inability to obtain the medical care that would have revealed her cancer and thereby allowed her to develop an adequate evidentiary record. We disagree. The law clearly imposes the burden of proof for medical causation on the party claiming compensation benefits. *See Allen v. Industrial Comm'n,* 729 P.2d 15, 27 (Utah 1986) ("Under the medical cause test, *the claimant must show* by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability. In the event *the claimant cannot show* a medical causal connection, compensation should be denied." (emphases added)). Because Petitioners are the claimants, they bear the burden of proving medical causation.