2017 UT App 64

## THE UTAH COURT OF APPEALS

ANTONIO O. VALDEZ,
Petitioner,

*v.*

LABOR COMMISSION AND
UNIFIED POLICE DEPARTMENT,
Respondents.

Opinion
No. 20150424-CA
Filed April 6, 2017

Original Proceeding in this Court

Ronald Ball, Virginius Dabney, and Stony Olsen,
Attorneys for Petitioner

Camille N. Johnson, Kenneth L. Reich, Maralyn M.
English, and Harry H. Souvall, Attorneys
for Respondents

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.

MORTENSEN, Judge:

¶1     Antonio O. Valdez, a police officer, experienced back pain after his patrol car came to an abrupt stop during an accident. The Labor Commission's Appeals Board denied him permanent total disability benefits, and Valdez now seeks judicial review of the denial. We decline to disturb that order.

### BACKGROUND

¶2     Valdez worked as a police officer for the Unified Police Department. In June 2010, as he was working a graveyard shift, a car and a motorcycle raced past his patrol car. Intending to pull over one or both of the drivers for speeding, Valdez pulled out

of the parking lot where he had been finishing a report. Around the same time, the speeding car turned in front of the speeding motorcycle, and the motorcycle hit the car. Part of the motorcycle, presumably dislodged during the collision, lay in the street. Valdez was traveling seventy miles per hour in pursuit of the vehicles when he ran into the dislodged motorcycle part, and his vehicle came to an abrupt stop.

¶3    Valdez reported feeling a "crack" in his neck upon impact. He also felt pain in his lower back as he exited his vehicle. Valdez's supervisor sent him home early because of his neck and back pain, and when he woke up "later that day, he had a very difficult time getting out of bed because his back was so stiff."

¶4    Over the next two years, Valdez received treatment from several doctors for back pain he attributed to the accident. During the course of treatment, in December 2011, one doctor concluded that Valdez "suffered from pre-existing diffuse idiopathic skeletal hyperostosis (DISH) of the thoracic spine, multilevel degenerative joint disease of the lumbar spine and cervical degenerative changes." His physical difficulties were exacerbated when, in May 2012, he hit his head against a vehicle door during "PIT maneuver"[1] training. Then, in August 2012, Valdez "suffered a back strain at work when he had hand to hand contact with a suspect during apprehension."

¶5    Ultimately, Valdez's doctors restricted his work activities. Because Valdez suffers from DISH, they concluded it would not be "safe [for] him to be exposed to potentially violent

---

1. "[A] PIT (precision intercept technique) is a maneuver in which an officer giving chase pushes the rear fender of the suspect's vehicle with the patrol car's opposite front fender, causing the suspect's vehicle to spin out of control and come to a stop." *Latits v. Phillips*, 826 N.W.2d 190, 192 n.1 (Mich. Ct. App. 2012).

encounters." He was further limited from lifting more than ten pounds, "stooping, pushing, pulling or prolonged standing or sitting." Given the practical implications of these restrictions on the career of a police officer, Valdez filed for workers' compensation benefits in December 2012. He requested medical expenses, medical care, travel expenses, temporary total disability compensation, and, eventually, permanent total disability benefits. The Unified Police Department denied that the accident was the legal or medical cause of Valdez's current condition.

¶6 The Utah Labor Commission (the Commission) submitted the medical issues to an independent medical panel, asking it "to conduct an impartial evaluation of the medical aspects of this case." Specifically, the Commission asked the medical panel: (1) whether there was "a medically demonstrable causal connection between" the accident and Valdez's then-current back problems; (2) "the date when, if ever, [Valdez's] medical problems caused by [the accident] stabilized"; (3) what "medical/functional restrictions, if any, from all conditions, whether industrial or non-industrially caused" Valdez suffered; and (4) what "medical/functional restrictions, if any, as the result only of [the accident]" Valdez suffered.

¶7 The medical panel determined that the accident aggravated Valdez's preexisting DISH and degenerative joint disease of the spine. It also concluded that all medical problems related to the accident had stabilized by November 2011. The more recent problems, the panel concluded, were attributable to "the ongoing progression of his pre-existing conditions," and it was this progression that "limited his ability to continue to work as a police officer." The medical panel acknowledged that Valdez "should not be exposed to violent encounters, manual physical training, or heavy lifting, twisting, prolonged standing, which will aggravate DISH. In effect, [Valdez] is limited to sedentary work." But in response to the Commission's final question regarding what medical or functional restrictions

Valdez suffered as a result of the accident, the medical panel answered, "None."

¶8    The Commission issued its findings of fact, conclusions of law, and order in December 2014. Relying on the medical panel's report, which the Commission determined was "supported by a preponderance of the evidence," the Commission concluded that Valdez's "current physical limitations are related to [Valdez's] pre-existing DISH condition, not the industrial accident." Thus, because the accident did not cause Valdez's "inability to perform former work," the Commission denied Valdez's claim for permanent total disability compensation.[2]

¶9    Valdez appealed the Commission's decision to the Commission's Appeals Board. The Appeals Board adopted the findings of fact and conclusions of law that the Commission had set forth and affirmed the Commission's order. Valdez now seeks judicial review of that decision.[3]

---

2. Valdez received temporary disability compensation pursuant to an agreement with the Unified Police Department, which covered "from the date of the accident through the date of the agreement" in February 2012. The Commission determined that because Valdez's accident-related injuries were resolved by November 2011, Valdez was "not entitled to any additional temporary total disability compensation. He became medically stable during the period covered by the Compensation Agreement." The Commission did, however, award Valdez "medical expenses incurred to treat his spinal condition through November 2, 2011."

3. We review the decision of the Appeals Board. But because that decision adopted the order of the Commission in its entirety, throughout the rest of this decision we refer to both the Commission and the Appeals Board simply as "the

(continued…)

ISSUE AND STANDARD OF REVIEW

¶10   Valdez asks us to decide just one issue: "Whether [the Commission] was correct when it concluded that a minor disease was the sole cause of [his] conditions and thus denied permanent total disability . . . ." But this is not the sort of administrative agency decision we review for correctness. *Cf. Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 18, 364 P.3d 756 (reviewing the Commission's interpretation of a statute for correctness). The question is one of fact, albeit a factual question best informed by expert testimony or evidence. *See Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 23, 378 P.3d 1273 ("Medical causation is fundamentally a factual determination."); *Virgin v. Board of Review of the Indus. Comm'n of Utah*, 803 P.2d 1284, 1287 (Utah Ct. App. 1990) ("Medical causation, including whether an industrial accident aggravated a pre-existing condition, is a factual matter."). Because medical causation is a question of fact, Valdez's challenge rests on whether the Commission's decision is "supported by substantial evidence when viewed in light of the whole record before the court." *See* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2016). "A finding is supported by substantial evidence when a reasonable mind might accept as adequate the evidence supporting the decision." *Bailey v. Retirement Board*, 2012 UT App 365, ¶ 2, 294 P.3d 577 (citation and internal quotation marks omitted).

ANALYSIS

I. Compensability of Aggravated Injuries

¶11   Before we address the merits of Valdez's challenge, we consider the legal standard involved in compensating injured

---

(…continued)
Commission." *Cf. Martinez-Ferrate v. Department of Commerce*, 2016 UT App 176, ¶ 18 n.6, 379 P.3d 923.

parties for the aggravation of preexisting conditions. In *Hutchings v. Labor Commission*, we explained:

> Under our Workers' Compensation Act, industrial accidents that aggravate or "light up" a preexisting condition are compensable. In order to qualify for compensation, the claimant must demonstrate (1) that the injury occurred "by accident" and (2) that the conditions and activities of the job were the cause of the injury. The key causation question is whether, given this body and this exertion, the exertion in fact contributed to the injury. The answer to this question has two components. The claimant must show that the work exertion was both the legal cause and the medical cause of the injury or disability.

2016 UT App 160, ¶ 16 (footnote, citations, and additional internal quotation marks omitted). This test, the history of which was examined in *Hutchings*, *see id.* ¶¶ 16–20, is commonly called the *Allen* test, *see, e.g.*, *Acosta v. Labor Comm'n*, 2002 UT App 67, ¶ 1, 44 P.3d 819; *see also Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986).

¶12    In *Acosta*, we considered whether the *Allen* test applies to scenarios like the one present here, where an employee suffers from an asymptomatic preexisting condition that becomes symptomatic as a result of an industrial accident. 2002 UT App 67, ¶ 18. We determined that, when evaluating "whether an injury arose out of and in the course of employment, it matters not at all, from the standpoint of legal causation, whether the preexisting condition was symptomatic or asymptomatic." *Id.* ¶ 27. We therefore concluded that "the *Allen* test applies— whether anyone knew prior to the accident that the condition existed or not." *Id.* Thus, a claimant may be compensated for injuries that aggravate a preexisting condition. *Allen*, 729 P.2d at 25–27. That said, a claimant seeking compensation for

aggravation of a preexisting condition—whether asymptomatic before the accident or not—must also demonstrate that the accident was the medical cause of the injury for which he seeks compensation. This means that if permanent total disability is sought on the basis of an aggravated preexisting condition, the claimant must demonstrate that the accident medically caused permanent aggravation.

¶13    In one of our recent decisions on this issue, we looked at the compensability of aggravated preexisting conditions that were aggravated only temporarily. *See Petersen v. Labor Comm'n*, 2016 UT App 222, 385 P.3d 759. In *Petersen*, the appellant argued that "it does not matter whether the accident caused only a temporary injury" and that "causation does not end because it's temporary . . . ; it goes on forever. It's lifetime medical provisions and the treatment attaches to [the] claim forever; [it is] lifetime medical care forever." *Id.* ¶ 16 (alterations in original) (internal quotation marks omitted). We rejected this argument, explaining that "it runs contrary to Utah law." *Id.* We reiterated that

> *Allen* makes clear that there must be a nexus between the accident and the injury for which treatment is sought. Only medical expenses for injuries resulting from an industrial accident are compensable. Requiring a nexus between the accident and injury prevent[s] an employer from becoming a general insurer of his employees and discourage[s] fraudulent claims.

*Id.* ¶ 18 (alterations in original) (citation and internal quotation marks omitted).

¶14    In short, while a claimant may be compensated for the aggravation of preexisting conditions caused by an industrial accident, regardless of whether the condition was symptomatic prior to the accident, *see Acosta*, 2002 UT App 67, ¶ 27, that entitlement ends when the aggravation stops being attributable to the industrial accident, *see Petersen*, 2016 UT App 222, ¶ 16. In

other words, if a preexisting condition is only temporarily aggravated by an industrial accident, a claimant may only recover for the temporary aggravation, and not for unrelated symptoms or complications he may experience down the road.

## II. Compensability of Valdez's Injuries

¶15     We now turn to the question of whether the Commission erred when it denied Valdez permanent total disability benefits. We consider this question in light of the Commission's findings that Valdez suffered from a preexisting condition, that the condition was aggravated by the accident, that the aggravation was resolved as of November 2011, and that Valdez suffered no permanent restrictions as a result of the accident.

### A.     Temporary Aggravation of Valdez's DISH

¶16     Because the *Allen* test governs our analysis, we begin there and decide "(1) [whether] the injury occurred 'by accident' and (2) [whether] the conditions and activities of the job were the cause of the injury." *See Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 16, 378 P.3d 1273 (footnote omitted). In this case, we have no occasion to move beyond the first prong of the *Allen* test.

¶17     DISH is not a condition that can be said to have "occurred 'by accident.'" *See id.* And while the crash that aggravated Valdez's DISH *did* occur by accident, Valdez does not seek our review of the compensation he received for the temporary aggravation of his DISH following the accident. Instead, he contends that the Commission should have further compensated him because "he can no longer perform the duties of an active police officer, due to the potential danger of further spinal injuries." At oral argument before this court, Valdez encouraged us to consider this case under the following framework: Before the accident, Valdez was a police officer; after the accident, he can no longer work as a police officer. But in this regard, Valdez conflates the permanent nature of his condition with the compensability of it.

¶18 Simply because the accident led to the discovery of Valdez's DISH does not mean that the accident caused the end of his career as a police officer. Instead, because he is now aware of his DISH, he is aware that work as a police officer would be particularly dangerous for him. As the Commission found, "it is not safe [for] him to be exposed to potentially violent encounters . . . . [B]ut for the DISH, [Valdez] could return to work as a police officer."[4]

¶19 Valdez argues that this conclusion is incorrect because "any aggravation of DISH is permanent." But rather than analyzing the specifics of this case, he focuses generally on DISH and the law regarding aggravation of preexisting conditions. This focus is immaterial to our decision, because the medical panel—the report of which the Commission adopted—concluded that any aggravation of DISH caused by the accident was resolved and is not the medical cause of Valdez's ongoing limitations. If that conclusion is supported by substantial evidence, Valdez's claim fails.

B.    Evidence Supporting the Commission's Decision

¶20 All we have left to determine, then, is whether the Commission's decision is supported by substantial evidence. *See* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2016). We conclude that it is.

¶21 In urging us to reject the Commission's decision, Valdez misconstrues the evidence before us. He argues that the Commission erroneously concluded "that the Medical Panel had decided that DISH was not aggravated," while "the Medical

---

4. As the Unified Police Department points out, Valdez "was released to return to work absent any exposure to 'potentially violent encounters.' This is not an aggravation but an acknowledgement by Mr. Valdez's physicians that his pre-existing condition requires him to find a new profession."

Panel specifically found that the industrial accident aggravated [Valdez's] DISH condition, and then attributed his current medical condition to that aggravated DISH condition." In reality, the medical panel concluded that the accident caused "aggravations of pre-existing [DISH] and degenerative joint disease of the spine" but that those aggravations were resolved by November 2011. And the Commission's decision did not, as Valdez contends, conclude that the medical panel found otherwise.

¶22    The Commission determined that any aggravation of Valdez's DISH condition caused by the accident was temporary. The medical panel, in its report, came to this very conclusion. We have held that a medical panel's report alone can be enough to conclude that a Commission's determination was supported by substantial evidence. *See Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 32, 378 P.3d 1273 (explaining that in that case "the medical panel's report alone provide[d] substantial evidence to support the Commission's medical causation determination"). Such is the case here. The medical panel addressed all of Valdez's impairments, both current and resolved, and how the accident contributed or did not contribute to them. It addressed his subsequent work-related injuries. And it explained how Valdez's preexisting conditions affected his limitations. This alone is sufficient for us to conclude that the Commission's decision was supported by substantial evidence.

¶23    Moreover, the Commission's decision was supported by evidence beyond the medical panel's report. This evidence included Valdez's return to "full work duties as a police officer following the industrial accident with no physical limitations," the progressive nature of DISH, and the testimony of a doctor not on the medical panel who also concluded that Valdez's accident-related problems were resolved by November 2011. Considering the medical panel's report along with this evidence, we have no difficulty concluding that the Commission's decision was supported by substantial evidence.

CONCLUSION

¶24 Valdez was injured in an industrial accident that aggravated his previously asymptomatic DISH disease. But that aggravation was only temporary, and he is not entitled to compensation beyond the point when the aggravation was resolved. The Commission determined that point was November 2011 and denied Valdez compensation beyond that date. Because the Commission's decision is supported by substantial evidence, we decline to disturb it.

————