**2017 UT App 169**

## THE UTAH COURT OF APPEALS

PAR ELECTRICAL AND OLD REPUBLIC INSURANCE CO.,
Petitioners,

*v.*

LABOR COMMISSION AND JOSEPH BALL,
Respondents.

Opinion
No. 20150913-CA
Filed September 8, 2017

Original Proceeding in this Court

Brad J. Miller and Andres Hermosillo, Attorneys
for Petitioners

Addison D. Larreau and W. Scott Lythgoe, Attorneys
for Respondent Joseph Ball

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

POHLMAN, Judge:

¶1      Par Electrical and its insurance carrier, Old Republic
Insurance Co., (collectively, Par) seek judicial review of the Utah
Labor Commission's affirmance of an administrative law judge's
order awarding permanent total disability compensation to
Joseph Ball under the Workers' Compensation Act. We decline
to disturb the Commission's decision.

BACKGROUND[1]

¶2     Ball worked for Par as a journeyman lineman servicing powerlines and electrical transformers. His duties required him to climb telephone poles wearing a tool belt that weighed 45 pounds on average and to manipulate into place transformers weighing approximately 2,500 pounds. In December 2006, Ball was repairing a transformer on an electric pole. To make the repair, the powerline had to remain live to allow Ball to transfer power to another transformer without interrupting electrical service. When Ball climbed the pole, he came in contact with live wires and deliberately fell back to break free of the electricity. Ball struck a shed on his way down and found himself hanging upside down inside it.

¶3     Ball was taken to the hospital where he was treated for multiple injuries, including non-displaced fractures in his thoracic vertebrae from T3 to T8 and an endplate fracture of the T5 vertebra. Ball was discharged from the hospital a few days after the accident, but he continued to receive treatment for his work injuries.

¶4     In March 2007, Dr. Chung, one of Ball's treating physicians, opined that the accident medically caused a compression fracture of the T5 vertebra and assessed Ball with a 6% whole-person impairment rating due to his work injuries. In April 2008, Dr. Chung recorded that Ball was having difficulty performing strenuous work, and in October 2009, Dr. Chung prescribed Ball medication for pain caused by the thoracic spine compression fracture. Dr. Chung also placed permanent work restrictions on Ball, limiting him from lifting more than "50 pounds, or 25 pounds repetitively," and stating that Ball should

---

1. In reviewing the Commission's decision, we view the facts in the light most favorable to the Commission's findings. *Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 2 n.1, 364 P.3d 756.

not repetitively bend or twist his torso and should change position every 30 minutes.

¶5    In October 2010, Dr. Adams, another treating physician, assessed Ball's physical capacity and opined that Ball was limited by his constant back pain, headaches, and depression stemming from the pain. Dr. Adams indicated that Ball could lift up to 10 pounds continuously, and up to 20 pounds frequently, but that he should not lift more than 20 pounds or carry any weight. Dr. Adams also reported that Ball's pain continuously interfered with his ability to concentrate on even simple work tasks.

¶6    Ball attempted to return to work after the accident, taking jobs with other companies, but was unable to perform assigned duties due to continuing back pain. In one job, Ball's pain flared so much that he had difficulty standing and his employment was terminated. In another, he worked as a foreman, supervising the work of others, but the job evolved to require heavy labor, and Ball could not perform the work because of his back pain. Ball's attempts to find other work were unsuccessful.

¶7    In September 2011, Ball filed a claim for permanent total disability compensation. Par's medical consultant, Dr. Woodward, evaluated Ball and opined that the work accident medically caused the transverse-process fractures in his thoracic spine, but he expressed uncertainty about whether the accident caused the T5 compression fracture. Dr. Woodward further concluded that Ball had no permanent work restrictions based, in part, on his understanding that Ball worked after the accident.

¶8    Following an evidentiary hearing, the administrative law judge (the ALJ) entered an interim order, concluding that the accident was the legal cause of Ball's injury but referring the medical issues, including medical cause, to a medical panel for evaluation. The ALJ directed the medical panel to answer three sets of questions, including inquiries regarding Ball's permanent

work restrictions. In posing her questions, the ALJ instructed as follows:

> If you discover additional facts which are not contrary to the facts in the Findings of Fact and Conclusions of Law contained in my Interim Order, and you use them in your examination and evaluation, it will be necessary to include them in your report and explain how the additional facts affected your analysis and conclusions.

¶9      A panel of two doctors—a neurologist and an orthopedic surgeon who specializes in upper extremities—examined Ball in June 2014 and reviewed his medical history with him. The panel also reviewed the ALJ's Findings of Fact and Interim Order, imaging studies, and 278 pages of Ball's medical records from various providers, including Dr. Woodward's evaluation. The panel opined that Ball's thoracic spine problems were medically caused by the work accident but that his cervical and lumbar spine problems were not. The panel opined that Ball's "lifting restrictions should be changed [from those set by Dr. Chung in 2009] to a light category namely lifting 20 [pounds] occasionally and 10 [pounds] frequently." In support of its opinion, the medical panel explained that it suspected that the 2009 work restrictions "were given on the basis of subjective pain reports" and that "[i]t is reasonable to give [Ball] the benefit of the doubt that he has chronic mid-back pain due to the T5 compression fracture that is worsened by heavy lifting." The panel also stated it had "no reason to doubt" Ball's report that the work restrictions provided by Dr. Chung "were insufficient to protect him from work activity-related flare-ups."

¶10     After receiving Par's objection to the medical panel's evaluation, the ALJ issued findings and an order wherein she concluded that Ball was permanently and totally disabled. Among other things, the ALJ concluded that Ball "suffered a significant impairment as the result of the December 5, 2006

industrial accident." She also determined that as a result of that impairment, Ball "has permanent work restrictions that limit [his] ability to lift more than 20 pounds on an occasional basis, remain in one position for more than 30 minutes at a time and . . . to bend and twist."

¶11    Par sought review of the ALJ's order by the Commission on two grounds. First, Par challenged the ALJ's determinations under Utah Code subsections 34A-2-413(1)(c)(iii) and (iv) that related to Ball's ability to perform other work. Second, Par argued that in opining on appropriate work restrictions, the medical panel improperly relied on Ball's self-report that Dr. Chung's 2009 work restrictions were insufficient to protect him from pain. The Commission affirmed the ALJ's decision and preliminary award of permanent total disability compensation to Ball. Par now petitions for judicial review.

ISSUES AND STANDARDS OF REVIEW

¶12    As we understand it, Par makes three primary contentions. First, with regard to the issue of medical causation, Par contends the ALJ ignored evidence and failed to support her findings with substantial evidence. Second, with regard to the requirement that Ball demonstrate that he is permanently and totally disabled, Par contends the Commission failed to consider the statutory factors, the ALJ did not consider all relevant evidence, and Ball failed to satisfy his burden of proof. Third, Par argues that the ALJ abused her discretion in relying on a medical panel report that included findings based on Ball's verbal report about the inadequacy of Dr. Chung's 2009 work restrictions.

¶13    This court's authority to review final agency actions is derived from the Administrative Procedures Act. Utah Code Ann. § 63G-4-403(1) (LexisNexis 2016). That Act provides that we may grant relief if we determine that a petitioner "has been substantially prejudiced" by, among other things, (1) the agency

erroneously interpreting or applying the law, (2) the agency basing its action upon a factual determination "that is not supported by substantial evidence when viewed in light of the whole record before the court," or (3) the agency abusing the discretion delegated to it by statute or otherwise acting arbitrarily or capriciously. *Id.* § 63G-4-403(4)(d), (g), (h)(i), (h)(iv).

## ANALYSIS

¶14    We begin with a brief review of the statutory framework applicable to claims for permanent total disability compensation. "The award of permanent total disability is a multi-step process." *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 11, 258 P.3d 640. The employee must first prove, by a preponderance of the evidence, that the employee "sustained a significant impairment" as a result of a work accident, that the employee is permanently and totally disabled, and that the work accident is the "direct cause" of the employee's permanent, total disability. Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis Supp. 2016).[2] Next, to prove a permanent, total disability, the employee must prove, also by a preponderance of the evidence, that

> (i) the employee is not gainfully employed;
>
> (ii) the employee has an impairment or combination of impairments that reasonably limit the employee's ability to do basic work activities;
>
> (iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the

2. Because the differences between the statutory provisions in effect at the relevant time and those now in effect are not material to our analysis, we refer to the current version of the statute for convenience.

essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . that is the basis for the employee's permanent total disability claim; and

(iv) the employee cannot perform other work reasonably available, taking into consideration the employee's: (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity.

*Id.* § 34A-2-413(1)(c).

¶15    "Once the ALJ makes an initial finding of permanent total disability, the employer is given the opportunity to submit a reemployment plan," *Columbia*, 2011 UT App 210, ¶ 11 (citing Utah Code subsection 34A-2-413(5)(a)), the purpose of which is to "return an injured worker with a disability to gainful employment," Utah Code Ann. § 34A-2-413.5(10) (LexisNexis Supp. 2016).

## I. Medical Causation

¶16    Par contends that the ALJ erred in awarding Ball permanent total disability benefits because his December 2006 work accident was not the direct cause of his disability. Specifically, Par argues that the ALJ ignored evidence on the issue of medical causation, including that Ball suffered from preexisting conditions, and that her findings were not supported by substantial evidence. Before we address the merits of Par's contention, we must first consider the threshold issue of whether Par properly preserved this issue for review.

¶17    Our rules require petitioners to demonstrate, by citation to the record, that all issues raised for judicial review were presented before the Commission. *See* Utah R. App. P. 24(a)(5)(A); *id.* R. 18 ("All provisions of these rules are applicable to review of decisions or orders of agencies . . . ."). Alternatively,

where an issue is unpreserved, the petitioner must identify grounds for seeking review of that issue. *Id.* R. 24(a)(5)(B).

¶18   Par did not comply with rule 24(a)(5). Its brief contains no record citations demonstrating that any one of the issues it raises was preserved, nor does it identify grounds justifying our review of unpreserved issues. Although we are under no obligation to do so, *see Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 11, 330 P.3d 762, we have reviewed the administrative record in an effort to determine whether the issues Par raises were preserved. With regard to Par's challenges to findings and conclusions relating to medical causation, we deem those challenges waived.

¶19   In *Ashcroft v. Industrial Commission*, 855 P.2d 267 (Utah Ct. App. 1993), this court considered whether the petitioner properly preserved for review issues of sufficiency of the evidence and adequacy of the ALJ's findings relating to medical and legal causation. *Id.* at 268. The court held that the petitioner waived his challenges to the ALJ's findings by failing to raise the issues before the Commission and could not raise them for the first time on petition for judicial review. *Id.* at 268–69.

¶20   Similarly, here, Par identified only two errors in its motion for review of the ALJ's findings and order, neither of which related to the ALJ's findings regarding medical causation. Thus, Par has waived its challenges to the sufficiency of the ALJ's findings relating to medical causation because it did not challenge those findings before the Commission. *See id.*; *see also Barnhart v. Labor Comm'n*, 2011 UT App 87, ¶ 2, 250 P.3d 1015 (per curiam) (determining that the petitioner waived a challenge to the ALJ's order where the petitioner did not raise the issue before the Commission in his motion for review).[3]

---

3. In an argument related to its challenge to the ALJ's findings concerning medical causation, Par contends that the

(continued…)

II. Ball's Ability to Perform Other Work

¶21    Par contends that the ALJ and/or the Commission erred in determining that Ball is permanently and totally disabled according to the requirements of Utah Code subsection 34A-2-413(1)(c). Par argues that the Commission did not consider the statutory factors, that the ALJ failed to consider relevant evidence, and that Ball did not satisfy his burden of proof. We will address each argument in turn.

¶22    First, referring to subsection (iv) of the statute, which requires that Ball "cannot perform other work reasonably available," *see* Utah Code Ann. § 34A-2-413(1)(c)(iv) (LexisNexis Supp. 2016), Par argues that the "Commission failed to consider various factors including [Ball's] age; education; past work

---

(…continued)

Commission should have "apportioned out of the permanent total disability award" Ball's preexisting degenerative conditions in his cervical and lumbar spine. Par has not demonstrated that this issue was preserved, *see supra* ¶ 17, and our review of the record shows that it was not raised before the Commission. Par also has failed to support its contention with any analysis or authority as required by the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 24(a)(9) (requiring the petitioner's argument to "contain the contentions and reasons . . . with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on"). Because Par's argument is both undeveloped and unpreserved, Par has not carried its burden of persuasion. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 ("[A]n appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." (citation and internal quotation marks omitted)); *Whitear v. Labor Comm'n*, 973 P.2d 982, 985 (Utah Ct. App. 1998) ("It is well settled that issues not raised before the Commission are waived on appeal.").

experience; medical capacity; and residual functional capacity." (Internal quotation marks omitted.) Par's argument not only lacks analysis, but it is not borne out by the record.

¶23    The ALJ's factual findings, which were adopted by the Commission, noted that Ball was 61 years old when Par's vocational expert evaluated him in 2012, that he had a high school education, and that he did not know how to use a computer. The ALJ also discussed at length Ball's work history, the type of labor Ball is capable of doing, and his limitations. Moreover, in concluding that Ball "cannot perform other work reasonably available" under Utah Code subsection 34A-2-413(1)(c)(iv), the Commission referred to Ball's "limited education," his past work experience, his work restrictions, and his inability to work in the heavy-labor positions he fulfilled in the past as a result of his "diminished physical capacity." Having overlooked these findings and conclusions, Par's contention that the Commission did not consider the statutory factors under subsection 34A-2-413(1)(c)(iv) fails. *Cf. Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (rejecting an argument that did not "address[] the actual basis" for the challenged decision).

¶24    Second, Par contends that the ALJ "misapplied prongs (iii) and (iv) of [Utah Code subsection] 34A-2-413(1)(c) to the facts of this case." Referring to the fact that Ball worked as a foreman after the accident, Par argues that the job requirements "were more managerial and light duty" and that Ball "would still be doing [the job]" if it were available. Par contends that the ALJ failed to discuss Ball's ability to work in this capacity, and thus she erred in concluding that Ball cannot perform work reasonably available to him.

¶25    Par's argument is misdirected. The Workers' Compensation Act provides that "an aggrieved party may secure judicial review [of an award of permanent total disability benefits] by commencing an action in the court of appeals

against the commissioner . . . for the review of *the decision of the commissioner*." *See* Utah Code Ann. § 34A-2-801(9)(a) (LexisNexis Supp. 2016) (emphasis added). If Par were challenging the ALJ's factual findings, those findings would be within the scope of our review because they were adopted by the Commission. But Par takes issue with the basis for the ALJ's conclusion that Ball cannot perform work reasonably available to him. The Commission reached its own conclusions on that issue, stating that it was unpersuaded by Par's claim. The Commission found that "while . . . Ball started out in the foreman position not having to engage in heavy work, he was gradually required to do heavy work that he could no longer perform with his lifting and postural restrictions." Having failed to address the Commission's reasoning, Par cannot succeed on appeal. *See Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 17, 391 P.3d 148 ("To succeed on appeal, the Petitioners must take issue with and demonstrate error in a *final* agency action . . . .").

¶26    Third, citing *Olsen v. Labor Commission*, 2011 UT App 70, 249 P.3d 586, Par contends that Ball failed to satisfy his burden to demonstrate that "'he can no longer perform the duties required in h[is] occupation and that he cannot be rehabilitated to perform some other type of employment.'" (Alteration in original) (quoting *id.* ¶ 19). The burden Par describes is one applicable to claimants seeking permanent total disability benefits by virtue of the "odd-lot" doctrine, a doctrine that "allows the Commission to find permanent total disability when a relatively small percentage of impairment caused by an industrial accident is combined with other factors to render the claimant unable to obtain employment." *Zupon v. Industrial Comm'n*, 860 P.2d 960, 963 (Utah Ct. App. 1993) (citation and internal quotation marks omitted).

¶27    Par has not demonstrated that the odd-lot doctrine applies here. We have seen no indication in the record that Ball relied on this doctrine in seeking permanent total disability

benefits, or that the Commission relied on the doctrine in awarding benefits to Ball. Thus, Par's argument that Ball failed to satisfy his burden under this doctrine is wide of the mark.

### III. The Medical Panel's Findings

¶28 Finally, pointing to the medical panel's reliance on Ball's verbal report about the efficacy of Dr. Chung's 2009 work restrictions, Par argues that the "ALJ abused her discretion in determining [Ball] to be permanently and totally disabled by admitting into evidence the medical panel report." Once again, Par directs its arguments against the wrong decision.

¶29 The Commission addressed and rejected Par's contention that the medical panel acted improperly and violated Par's rights "when the medical panel took . . . Ball at his word that Dr. Chung's [work] restrictions . . . were insufficient." The Commission concluded that Par's rights were not violated "because the panel did not base its work restrictions solely on . . . Ball's description of pain flare-ups under Dr. Chung's restrictions." The Commission found that the medical panel considered Dr. Chung's work restrictions "along with the other medical evidence pertaining to . . . Ball's physical condition" and found no reason to doubt Ball's description of the pain he continued to experience. The Commission further concluded that the panel's proposed restrictions "strike a fair balance between Dr. Adams's restrictions and Dr. Woodward's finding that . . . Ball had no physical limitations," and were supported by the medical evidence.

¶30 Rather than address the Commission's decision on this issue, Par attacks the reasoning of the ALJ. As we previously explained, to succeed on judicial review, Par must demonstrate error in the Commission's decision. *See supra* ¶ 25. That is the decision we have authority to review. *See* Utah Code Ann. § 34A-2-801(9)(a) (LexisNexis Supp. 2016). By failing to engage with the Commission's reasoning, Par cannot successfully challenge the Commission's decision. *See Utah Physicians for a*

*Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 17, 391 P.3d 148; *cf. Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower [tribunal], the appellate court will not seek out errors in the lower [tribunal's] decision.").

CONCLUSION

¶31    We conclude that Par has failed to demonstrate that the Commission erred in determining that Ball is entitled to permanent total disability benefits as a result of the December 2006 work accident. Accordingly, we do not disturb the Commission's decision.

_____