**2021 UT App 131**

# THE UTAH COURT OF APPEALS

ILENE MORRIS,
Petitioner,

*v.*

LABOR COMMISSION, HERITAGE PARK CARE CENTER, AND SAFETY
NATIONAL CASUALTY CORP. CO.,
Respondents.

Opinion
No. 20200440-CA
Filed November 26, 2021

Original Proceeding in this Court

Jared L. Mortenson, Attorney for Petitioner

Christin Bechmann and Jeffrey A. Callister,
Attorneys for Respondents Heritage Park Care
Center and Safety National Casualty Corp. Co.

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1 Ilene Morris applied for workers' compensation benefits after injuring her back at work. The Utah Labor Commission found that Morris had a preexisting back condition and that her accident had temporarily aggravated her condition for a period of three months. Although Morris complained of health issues beyond that time, the Commission found that those issues were not medically caused by the accident. Accordingly, it awarded her three months' worth of temporary benefits. Morris now seeks judicial review. We decline to disturb the Commission's decision.

BACKGROUND[1]

¶2    At the time of her accident, Morris worked as a respiratory therapist for Heritage Park Care Center. On August 19, 2017, Morris entered a patient's room and found her standing over the bedside commode, swaying as if she were about to fall. Morris caught the patient and immediately felt a sharp, pinching pain in her back. Although the pain eventually dulled, it returned later that day after Morris tried to lift a different patient with the help of a coworker. Morris was ultimately referred to an occupational health services provider and diagnosed with a muscle and tendon sprain of the lower back.

¶3    Morris's recovery fluctuated over the next several months. On September 21, 2017, Morris told one of her treating physicians that she was "definitely doing better" and rated her pain as a one on a ten-point scale. By the following month, however, Morris began experiencing flare-ups of pain in her lower back, along with other health issues. Two of these flare-ups coincided with severe coughing episodes that Morris suffered on October 24 and November 1, 2017.

¶4    Morris requested workers' compensation in the form of permanent partial disability benefits.[2] After Heritage opposed

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *JBS USA v. Labor Comm'n*, 2020 UT App 86, n.1, 467 P.3d 905 (cleaned up).

2. Morris also requested temporary total and temporary partial disability compensation for various periods of her recovery, as well as compensation for past medical expenses, recommended medical care, travel expenses, and unpaid interest. Morris does

(continued…)

the request, the administrative law judge (ALJ) referred the medical aspects of Morris's claim to a panel of experts. The medical panel then reviewed 1,072 pages of Morris's medical records and physically examined Morris before submitting a written report to the ALJ. The panel concluded that Morris had preexisting degenerative disc disease and that her accident had caused "an acute exacerbation" of that condition. It opined that Morris's workplace injury had "most likely reached medical stability on September 21, 2017." Neither party objected to the panel's report, and the ALJ entered the report into evidence.

¶5     Based on the medical panel report, the ALJ awarded Morris temporary partial disability benefits from the date of the accident through September 21, 2017. Morris sought review from the Commission, arguing that the ALJ should not have adopted the medical panel's conclusions because the report failed to account for her ongoing health issues. The Commission found that the report was thorough, well-reasoned, and impartial, and that it supported the ALJ's determination that "Morris's work-related low-back injury was temporary in nature." But "in light of the evidence that [Morris's] symptoms appeared to continue beyond September 21, 2017," the Commission remanded for clarification from the medical panel as to the date Morris's workplace injury had resolved.

¶6     In a supplemental report, the panel expanded on several of its prior conclusions. Regarding Morris's preexisting condition, the panel explained that "[o]ften, . . . degenerative disc disease is asymptomatic," but that when symptoms occur, they "can range from having no pain to having significant low back pain . . . . Pain often occurs without a known injury or

_____

(…continued)
not challenge the Commission's rulings as to these other benefits.

change in daily activity." The panel added that "[a]cute episodes of back pain are expected and considered to be a normal manifestation of the chronic disease process" and that "[ninety percent] of people with an acute episode of low back pain will recover" within three months.

¶7    The panel next discussed the relationship between Morris's coughing episodes and her preexisting condition: "With degenerative disc disease, an increase in pressure near the disc can cause pain. An increase in pressure can occur with lifting or with coughing or sneezing." In the panel's view, it was "medically more likely than not" that this increase in pressure explained Morris's flare-ups following each of her coughing episodes.

¶8    Finally, the panel clarified its opinion regarding the date Morris's workplace injury had resolved. For the period before November 19, 2017 (three months after Morris's accident), the panel concluded that it was "medically more likely than not that" Morris's health issues "were a result of her industrial accident, her degenerative disc disease[,] and the reported coughing episode[s]." After November 19, 2017, however, the panel said Morris's symptoms were no longer "a clinically significant result of her lifting injury at work."

¶9    Over Morris's objection, the ALJ entered the supplemental report into evidence. And based on the panel's clarified opinions, the ALJ found that Morris's workplace "accident caused an acute lumbar strain, which would be considered a temporary exacerbation of her preexisting [condition]." The ALJ also found that Morris's workplace injury "would have been expected to reach medical stability within three months of the injury date," but that her first coughing episode was an intervening injury that "sever[ed] medical causation." The ALJ then awarded Morris benefits from the date

of her accident up to October 23, 2017, the day before Morris's first coughing episode.

¶10 On review, the Commission adopted the ALJ's findings of fact but modified the temporary benefits award. The Commission reasoned that, according to the supplemental medical panel report, Morris's workplace accident affected her until November 19, 2017, after which the accident was no longer a clinically significant cause of her health issues. Therefore, Morris was entitled to benefits from the date of her accident until November 19, 2017. As the Commission explained, "Whether such problems after that date resulted from the coughing episodes or progression of [Morris's] underlying lumbar-spine degeneration, the medical causal connection between . . . Morris's low-back condition and her work activities was severed."

¶11 Morris now seeks judicial review of the Commission's decision.

ISSUE AND STANDARD OF REVIEW

¶12 Morris challenges the Commission's determination of medical causation. "[W]hether the Commission properly found that medical causation exists is a question of fact we review for substantial evidence." *YESCO v. Labor Comm'n*, 2021 UT App 96, ¶ 13. "Substantial evidence is more than a mere scintilla of evidence though something less than the weight of the evidence, and the substantial evidence test is met when a reasonable mind might accept as adequate the evidence supporting the decision." *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 30, 378 P.3d 1273 (cleaned up).

ANALYSIS

¶13 Morris argues that the Commission erred in finding that her workplace accident was not the medical cause of her health issues after November 19, 2017. We conclude that there is substantial evidence supporting that determination and, therefore, decline to disturb the Commission's decision.

¶14 Under Utah's Workers' Compensation Act (the Act), an employer must compensate an employee "who is injured . . . by accident arising out of and in the course of [her] employment." Utah Code Ann. § 34A-2-401(1) (LexisNexis 2019). "Thus, in addition to proving that an injury was accidental, an employee must establish that there is a causal connection between the injury and the employment." *Wright v. Labor Comm'n*, 2021 UT App 43, ¶ 28, 489 P.3d 211 (cleaned up), *cert. granted*, 496 P.3d 711 (Utah 2021). To establish a causal connection, the employee must show that the "accident was both the legal cause and the medical cause of the injury." *Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 14, 405 P.3d 863 (citing *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986)). In this case, Morris challenges the Commission's finding only as to medical causation.

¶15 "To prove medical causation, an injured employee must establish by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability." *Wright*, 2021 UT App 43, ¶ 29 (cleaned up). A workplace accident leads to an injury even if it is merely "*a* cause—as opposed to *the* cause—of the condition requiring treatment." *Cox*, 2017 UT App 175, ¶ 18. For this reason, "the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable" under the Act. *Id.* (cleaned up).

¶16 Like any workplace injury, the aggravation of a preexisting condition is compensable only to the extent there is

"a nexus between the accident and the injury for which treatment is sought." *See Petersen v. Labor Comm'n*, 2016 UT App 222, ¶ 18, 385 P.3d 759. This means that even though

> a claimant may be compensated for the aggravation of preexisting conditions caused by an industrial accident . . . , that entitlement ends when the aggravation stops being attributable to the industrial accident. In other words, if a preexisting condition is only temporarily aggravated by an industrial accident, a claimant may only recover for the temporary aggravation, and not for unrelated symptoms or complications [s]he may experience down the road.

*Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 14, 397 P.3d 753 (cleaned up). This principle "prevents an employer from becoming a general insurer of [its] employees and discourages fraudulent claims." *See Petersen*, 2016 UT App 222, ¶ 18 (cleaned up).

¶17 With that understanding, we conclude that there is substantial evidence to support the Commission's decision in this case. As a preliminary matter, we note that a "medical panel's report alone can be enough to conclude that [the] Commission's determination was supported by substantial evidence." *Valdez*, 2017 UT App 64, ¶ 22. After all, the Act expressly permits the Commission to base its findings on a medical panel's report, *see* Utah Code Ann. § 34A-2-601(2)(e)(i) (LexisNexis 2019), and we will not question the Commission's decision to do so where, as here, the reports are thorough and prepared by neutral medical experts,[3] *see, e.g., Hutchings v. Labor*

---

3. Morris argues that one of the panelists was biased against her, but she does not direct us to where this argument was raised

(continued…)

*Comm'n*, 2016 UT App 160, ¶¶32–38, 378 P.3d 1273; *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 18, 317 P.3d 464. Accordingly, if the Commission's decision is supported by the medical panel reports, the substantial evidence standard is satisfied.

¶18 In this case, the medical panel reports fully support the Commission's medical cause determination. In its initial report, the panel concluded that Morris suffered from preexisting degenerative disc disease and that her accident caused an "acute exacerbation of that condition." Then, on remand, the panel indicated that the effects of the exacerbation were no longer "clinically significant" by November 19, 2017. The panel further explained that intermittent symptoms were "a normal manifestation" of Morris's preexisting condition and that it was more likely than not that her condition was aggravated by the subsequent coughing episodes. Accordingly, though Morris still had ongoing health issues, the panel attributed those symptoms to "her degenerative disc disease and the reported coughing episode[s]." These conclusions support the Commission's finding that Morris's accident caused a temporary aggravation of her preexisting condition and that the aggravation resolved by November 19, 2017.[4]

---

(…continued)

before the ALJ or the Commission. "Our rules require petitioners to demonstrate, by citation to the record, that all issues raised for judicial review were presented before the Commission." *Par Elec. v. Labor Comm'n*, 2017 UT App 169, ¶ 17, 405 P.3d 842. Because the issue is unpreserved, we will not address it for the first time on review. *See id.* ¶¶ 19–20.

4. Morris also challenges the Commission's adoption of these key conclusions in its factual findings. To the extent Morris believes the medical panel reports themselves are unsupported

(continued…)

¶19  Notwithstanding that evidence, Morris contends that she is entitled to ongoing benefits based on the two-part test we articulated in *Cox v. Labor Commission*, 2017 UT App 175, 405 P.3d 863. There, we said,

> [T]o recover for a medical condition, a claimant must show that (1) the industrial accident contributed in any degree to the claimant's condition, such as by aggravating a preexisting condition, and (2) the aggravation is permanent, i.e., the claimant's medical condition never returned to baseline, meaning the claimant's condition immediately before the accident.

*Id.* ¶ 20. Morris asserts that these elements are satisfied with respect to her chronic health issues and that, consequently, she remains entitled to compensation. We disagree.

¶20  Morris cannot satisfy the second element of *Cox* because her accident did not permanently aggravate her preexisting condition. The Commission found that the aggravation caused by Morris's accident had resolved by November 19, 2017, and

_____

(…continued)

by the record, she had the opportunity to object to their admission below. *See* Utah Code Ann. § 34A-2-601(2)(d)(ii) (LexisNexis 2019). Morris failed to do so with respect to the first medical panel report. *See id.* § 34A-2-601(2)(d)(ii)–(iii) ("If no written objection is filed within [twenty days], the report is considered admitted into evidence."). And although Morris did object to the panel's supplemental report, she has not asked us to review the Commission's decision to admit the report over her objection. Accordingly, we treat the medical panel reports as competent evidence on which the Commission was entitled to rely.

that the remainder of her symptoms at that point were caused exclusively by her preexisting condition and later coughing episodes. Thus, the accident merely caused a temporary aggravation.

¶21 But Morris argues that the second prong is necessarily satisfied because she was "fully functional" immediately before the accident but, ever since, has had "chronic low back pain" and "persisting low back and leg" issues. Accordingly, Morris reasons that she has yet to "return to [her] baseline, pre-[a]ccident condition" as described in *Cox*. We acknowledge that the definition of "baseline" we gave in *Cox*—"meaning the claimant's condition immediately before the accident"—seemingly supports Morris's reasoning. *See id.* But that definition cannot be mechanically applied to the facts of this case without running afoul of the broader principle: "if a preexisting condition is only temporarily aggravated by an industrial accident, a claimant may only recover for the temporary aggravation, and not for unrelated symptoms or complications." *Id.* ¶ 19 (cleaned up). That principle is ultimately incompatible with Morris's argument because, as the medical panel opined and the Commission found, the health issues she asserts have prevented her from returning to baseline are exclusively the result of her preexisting condition and non-industrial factors.

¶22 We take this opportunity to clarify the second element of the *Cox* test. By "baseline" we mean the claimant's condition immediately before the accident, taking into account the natural course of any preexisting conditions. This includes subsequent aggravations or flare-ups not attributable to the accident. Put another way, an aggravation caused by a workplace accident is not permanent simply because the claimant begins to experience new symptoms of the same preexisting condition—symptoms that were not caused by the accident—before the symptoms caused by the accident are fully resolved. Were the rule otherwise, employees could argue that they are entitled to

permanent benefits simply because their general health has declined for reasons entirely unrelated to a workplace accident.

¶23 With that clarification, we conclude that Morris's accident did not cause a permanent aggravation of her preexisting condition. As the Commission determined from the medical panel reports, Morris had "degenerative disc disease . . . , which manifests with a range of symptoms and commonly results in intermittent low-back pain." The condition also made Morris susceptible to additional flare-ups whenever lifting, coughing, or sneezing. And because the Commission attributed Morris's ongoing health issues to her preexisting condition and coughing episodes, its findings support the conclusion that Morris returned to baseline by November 19, 2017. Therefore, Morris's workplace accident did not cause a permanent aggravation.[5]

¶24 Finally, Morris invokes "the benefit-of-the-doubt presumption," *see Jex v. Labor Comm'n*, 2013 UT 40, ¶¶ 52–57, 306 P.3d 799, i.e., that the "Act is to be liberally construed and any doubt as to compensation is to be resolved in favor of the applicant," *Fred Meyer v. Industrial Comm'n*, 800 P.2d 825, 828 (Utah Ct. App. 1990) (cleaned up). Morris directs us to portions of her medical record that seemingly conflict with the medical

---

5. Morris also claims that the Commission erred by determining that her first coughing episode "was an intervening, benefit-severing injury event." We do not think the Commission made any such determination. Although the Commission stated that "the medical causal connection between Ms. Morris's low-back condition and her work activities was *severed*," it then awarded benefits until November 19, 2017, not October 24, 2017, the date of Morris's coughing episode. (Emphasis added.) Accordingly, the Commission did not sever benefits due to an intervening injury; it merely ended them consistent with the principles of medical causation we articulate here.

panel's conclusions and argues that, presumption applied, the Commission should not have sided with the medical panel. But the benefit-of-the-doubt presumption applies only "[i]n the rare case where" the Commission's assessment of facts and law "yields genuine doubt—in a dead heat without an apparent winner." *Jex*, 2013 UT 40, ¶ 56. Even assuming that Morris's medical records support her interpretation, the evidence was not so inconclusive that the Commission had no choice but to call the tie in Morris's favor. The Commission has the "responsibility to resolve conflicts in the evidence" and "may choose to give certain evidence more weight than other evidence." *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 20, 317 P.3d 464 (cleaned up). Here, the Commission found the medical panel reports to be credible and was entitled to rely on them, even if other evidence in the record might have supported a different determination. *See id.*

CONCLUSION

¶25  We conclude the medical panel reports support the Commission's findings that Morris's accident caused a temporary aggravation of her preexisting condition, and that the aggravation resolved by November 19, 2017. Because there was substantial evidence to support the Commission's medical cause determination and award of temporary benefits, we decline to disturb the Commission's decision.

———————————